MARY JACOB ET AL. *v.* MOSLER SAFE COMPANY, INC.

MALTBIE, C. J., AVERY, BROWN, JENNINGS and ELLS, JS.

Argued June 4—decided July 25, 1940.

*Milton L. Cohn,* with whom was *Israel J. Cohn,* for the appellant (defendant).

*Philip Reich,* with whom, on the brief, was *Samuel Reich,* for the appellees (plaintiffs).

ELLS, J. One who employs an independent contractor to do a certain work is not liable, as a general rule, for injuries resulting from its performance, but he does render himself liable when the work required of the contractor will, in its ordinary and reasonable execution, necessarily expose others to probable injuries. This exception is not based on the theory of negligent performance by the independent contractor, but upon the principle that the employer or owner has caused something to be done which he knows, or ought to know will cause, or will probably cause, the injury which ensues. *Alexander* v. *Sherman's Sons Co.*, 86 Conn. 292, 85 Atl. 514. The question at issue in this case is whether the facts bring it within this exception to the general rule.

The facts are undisputed. The defendent purchased a vault door and frame located in the basement of a building formerly occupied as a bank, and contracted with Adams, Waldo and Conger, Inc., to remove them. That firm hired a company known as The Expert Concrete Breakers to do some of the work, but exercised complete supervision of all the work. Due care was used in selecting the independent contractor and the defendant relied on the latter's experience and ability to carefully and skillfully perform the work. The defendant exercised no control or supervision as to the method or manner of performing the work. The plaintiffs occupied, as a tenant of the owner of the building, a store on the street floor and a room in the basement which was one of several former coupon rooms. They operated a dress shop, and had stored a surplus stock in the basement room. Neither the defendant nor the contractor had notice prior to the doing of the work that dresses or other property that might be damaged by dust were in any of the former coupon rooms in the basement, nor did they know that

this room was occupied by tenants of the building. One of the owners of the building was present at all times during the performance of the work. It does not appear that he knew the room was thus occupied and used. In any event he did not notify the defendant or the contractor of such occupancy. The door to this room was locked, and kept locked by the plaintiffs. The several former coupon rooms, including this one, opened into a common areaway upon which the bank vault door also opened. Access to the plaintiffs' room was by a door, at the bottom of which there was a ventilator consisting of an opening covered by a wire screen.

The plaintiffs claim the nub of the case is the court's finding that in order to remove the vault door and frame it was necessary to cut the walls by means of compressed air drills, which necessarily involved the production and diffusion of a great amount of gritty dirt and that the defendant knew there was no other way of doing this work. At about 8 o'clock on the morning of March 22, 1938, the work was begun, and almost immediately considerable dust found its way through the ventilator and ruined the dresses. This could have been easily prevented by sealing up the ventilator, or by enclosing the place of the cutting of the concrete. It is not found that any damage was done to the stock of dresses on the floor above. No inquiry was made by the defendant or its subcontractor, The Expert Concrete Breakers to determine whether there was any property in any of the coupon rooms which might be damaged by the dust.

The trial court concluded that the independent contractor was negligent in failing to take adequate means to confine the dust, that the defendant owed a duty to see that proper precautions were taken, that the defendant was guilty of actionable negligence, and that

it is liable for the negligence of its independent contractor.

We have already stated that the contractee is not made liable because of the negligent performance of the work by the independent contractor. The test is whether he caused something to be done which, when properly done he knows or ought to know will cause or probably cause, the injury complained of. He is not liable for injuries caused by the contractor's negligence in performing the work contracted for where its reasonable performance will not necessarily or obviously expose others to probable injury. Where it will expose others to such injuries, he may be held liable although the injuries are caused in the proper performance of the work. *Alexander* v. *Sherman's Sons Co.*, supra.

The trial court, having found that the independent contractor was negligent it follows that it did not properly perform the work. This work, in its natural and reasonable execution, did not call for the use of such means as would obviously have exposed the plaintiffs to probable injury. It was only because of the failure of the company to take precaution against injury that it resulted. In the *Alexander* case, supra, we approved a charge that "if the independent contractor . . . did not use such care as the defendant had a right to expect, and by reason of the lack of such care and not in the due and natural performance of the contract the injury occurred, the defendant is not responsible."

There was nothing inherently or intrinsically dangerous about the work to be performed, in this case. Danger attended only its negligent performance. Negligence comprehends acts of omission as well as of commission. The negligence of the independent contractor was in its omission of proper precautions.

In *Lawrence* v. *Shipman,* reported in the supplement to 39 Conn. 586, 589, Judge Seymour's famous opinion formulated four rules of law, two of which lead the way to a correct decision of the present problem. "1. If a contractor faithfully performs his contract, and a third person is injured by the contractor, in the course of its due performance, or by its result, the employer is liable, for he causes the precise act to be done which occasions the injury; but for negligences of the contractor, not done *under* the contract but in *violation* of it, the employer is in general not liable. It is not claimed here that the injury to the plaintiffs arose from the due *performance* of the contract. On the contrary, it resulted from the *breach* of the contract, by the contractor not doing his work with suitable care." The last two sentences state the situation in the present case. "2. If I employ a contractor to do a job of work for me which in the progress of its execution obviously exposes others to unusual peril, I ought, I think, to be responsible upon the same principle as in the last case, for I cause acts to be done which naturally expose others to injury."

The trial court relied principally upon *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 526-528, 28 Atl. 32, and upon *Bower* v. *Peate,* L. R. (1876) 1 Queen Bench Div. 321, cited therein. In the *Norwalk* case we discussed the second of Judge Seymour's rules, supra, and said (p. 527): ". . . the defendant would be liable for negligence of the contractor, resulting in damage to the plaintiff's property, provided the work, in the progress of its execution, although it might have been performed without necessary injury, obviously and naturally exposed the plaintiff's property to probable injury or unusual peril; in this case, of course, resulting not from the adoption of the system or the location or plan of the sewers, but in the use of the ordinarily

and reasonably to be contemplated means or agencies for the proposed construction. We think, also, that the operation of blasting with dynamite is " 'intrinsically dangerous.' " In its application to the present case it means that this defendant would be liable for the negligence of its contractor, provided the work, although it might have been performed without necessary injury obviously and necessarily exposed the plaintiff's property to probable injury or unusual peril, resulting from the use of the ordinarily and reasonably to be contemplated means or agency for doing the work,—cutting cement with compressed air drills in the basement of an occupied building. Here the ordinarily or reasonably to be contemplated means or agencies would be protected, and not unprotected drilling. Furthermore, the *Norwalk* case was a blasting case, under circumstances held to be intrinsically dangerous, and belongs to that well known exception to the general rule, including also fire, poisonous substances and work which naturally endangers travel on public highways. Take, for instance, the matter of blasting; that holds in itself an element of risk to any property or person within the area where its force may be felt. That is not true of work which produces dust, because dust is not ordinarily harmful to person or property, but becomes so only by reason of peculiar susceptibility or peculiar circumstances. In this case the danger of injury was not in the production of the dust itself, but in the fact that there were in the vicinity and under the peculiar circumstances of the case articles which could be injured by it. There was not a general danger of injury from the production of the dust, but one dependent upon circumstances peculiar to the situation. For that reason the finding of the trial court that the only way to remove the door and frame was to cut the walls with compressed air

drills, and that this necessarily involved the production and diffusion of a great amount of gritty dust, fails to bring the case within the doctrine which we are discussing. The trial court adopted a rule of liability broader than has ever been adopted in this state. The essence of its conclusion is that injury would probably result from the doing of this work unless precautions were taken, and therefore the defendant was under a duty to see that such precautions were taken. We have pointed out the gap in this reasoning.

We find little difficulty with the statement in the *Norwalk* case (p. 528). "It is as sound a rule of law as of morals, that when, in the natural course of things, injurious consequences will arise to another from an act which I cause to be done, unless means are adopted by which such consequences may be prevented, I am bound, so far as it lies within my power, to see to the doing of that which is necessary to prevent the mischief. Failure to do so would be culpable negligence on my part. *Bower* v. *Peate*, L. R. 1 Queen's Bench Div. 321. Certain of the provisions in the specifications, to which reference has been made, were apparently inserted in recognition of this principle. But in such cases it is not sufficient that the employer contracts with another to use the care to prevent harm, which the hazardous nature of the stipulated work requires. He is bound, at his own peril, to see to it that such care is used. And he is responsible, as for his own negligence, if it is not." The rule of *Bower* v. *Peate* is the precedent from which developed the rule that an employer is liable for injuries caused by the failure of an independent contractor to exercise due care in the performance of work which is inherently or intrinsically dangerous. Although in more general language, *Bower* v. *Peate* has never been interpreted as sanctioning a broader basis of employer liability. See

Responsibility for the Torts of an Independent Contractor, 39 Yale L. J. 861, 865 (1930).

In the light of the Connecticut cases, which are in conformity with the rule of American cases, the work must be one from which mischievous consequences will arise unless preventive measures are adopted. One who employs an independent contractor to do work in the careful performance of which injuries will naturally and probably result unless precautions are taken is under a duty to see that such precautions are taken. In *Swearsky* v. *Stanley Dry Goods Co., Inc.,* 122 Conn. 7, 186 Atl. 556, an independent contractor was hired to wash the vestibule and windows daily, except that he was to exercise his own judgment as to washing the latter in freezing weather. It would be a natural and reasonably to be foreseen consequence that such water, if allowed to run onto the sidewalk in freezing weather, would freeze and be dangerous. We denied recovery to a pedestrian thus injured. There, as here, there was no actual knowledge by the defendant of the contractor's negligence, and we decided (p. 11) that the defendant was not negligent in failing to require the contractor to prevent the water from flowing onto the walk. It was claimed the case came under the "intrinsically dangerous" highway rule referred to above, but we decided otherwise.

*Campus* v. *McElligott,* 122 Conn. 14, 187 Atl. 29, did come within that class. We discussed and approved *Bower* v. *Peate* and applied it specifically "to those cases affecting users of the highway." We have not, so far as we are aware, applied the doctrine of the English case to others than "intrinsically dangerous" and highway cases.

There are almost innumerable cases illustrating situations which do or do not come within the excep-

tions considered in this case. 18 A. L. R. 801, Annotation, discusses many of them.

The effect of this decision is not to deny relief to these plaintiffs. They have their action against the independent contractor.

There is error, and the cause is remanded with direction to enter judgment for the defendant.

In this opinion the other judges concurred.