THE MILLSTONE CORPORATION *v.* THE LAUREL OIL COMPANY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued January 4—decided February 21, 1945.

*Wallace W. Brown,* with whom were *Edwin M. Ryan* and, on the brief, *J. Harold Williams,* for the appellant (defendant).

*John Buckley,* for the appellee (plaintiff).

JENNINGS, J. A tank belonging to the defendant which had been used for the underground storage of

gasoline exploded while being steamed out by an independent contractor in the plaintiff's building, doing the damage to the property of the plaintiff of which it complains. The pleadings raise numerous issues but the decisive one may be stated as follows: Do the subordinate facts support the conclusion that the steaming process was inherently dangerous so as to make the defendant liable for the contractor's negligence? The facts found, necessary to determine this issue, with such correction as the defendant is entitled to, are as follows: The plaintiff owns and manages various properties in Hartford including the building here in question. This is a large, one-story garage equipped and used primarily for lubricating, washing and steam-cleaning automobiles. It had also been used by tenants in recent years for steam-cleaning gasoline tanks. Leavitt and Beckwith had been the plaintiff's tenants for six months preceding October 1, 1941, when the explosion occurred, and during that time had continued the business of steaming gasoline tanks. The defendant was engaged in the distribution of gasoline and other products and used underground storage tanks.

On September 30, 1941, the defendant arranged with William Gruntler to remove one of its two thousand gallon underground tanks from its location in Hartford to Willington. The defendant's president, James L. McIntyre, was present when the tank was dug up. It was found to be in a leaky condition. Gruntler suggested that he take the tank to Leavitt and Beckwith to have it cleaned and repaired, and McIntyre did not object. They later met there and the time required for the operation was discussed. Neither McIntyre nor the defendant entered into any arrangement with Leavitt and Beckwith relative to the steaming of the tank or compensation therefor. The finding

is somewhat inconsistent in this respect, but it is assumed for the purposes of this opinion that McIntyre at least acquiesced in the arrangement made by Gruntler. The defendant's answer admits that it knew that the work was to be done in the plaintiff's building. A tank which is to be steamed is first rinsed out with water and then steam is injected into it under pressure at one end and emitted at the other to carry off all gasoline fumes not previously removed. This course was followed with the tank in question. Any tank which has recently held gasoline and which has not been cleaned must be handled in the knowledge that gasoline is inflammable and that the fumes which arise from it under normal conditions will explode if they have a concentration by volume of 1 to 6 per cent in air and a flame or spark is brought into direct contact with them. No evidence was offered of the explosion of a gasoline tank while being steamed, although different witnesses testified to having steamed a great many of them.

The tank in question was steamed for four hours and a half at a pressure of forty pounds on the late afternoon of September 30. The steam was introduced through a rubber hose with a metal nozzle. Both valve ends were left open that night so that gas vapors could condense and escape. The next morning Leavitt started the fire under the steam boiler at 6:30, leaving the fire door open, and within an hour had steam going into the tank at a pressure of fifteen pounds. He also started an electric motor in a neighboring basement. About 9 a.m. the tank blew up, seriously damaging the plaintiff's building.

On these facts the trial court concluded in effect that the steaming of the defendant's tank on the plaintiff's premises exposed the latter to probable injury, and that the defendant owed the plaintiff a duty to see

that the process was carried on by the contractor with due care.

This case is patently not within the principle of law that makes one who employs an independent contractor liable for injuries where the work will, in its ordinary and reasonable execution, expose others to probable injury. *Jacob* v. *Mosler Safe Co., Inc.*, 127 Conn. 186, 187, 14 Atl. (2d) 736. The applicable rule of law is as follows: "It is as sound a rule of law as of morals, that when, in the natural course of things, injurious consequences will arise to another from an act which I cause to be done, unless means are adopted by which such consequences may be prevented, I am bound, so far as it lies within my power, to see to the doing of that which is necessary to prevent the mischief. Failure to do so would be culpable negligence on my part." *Norwalk Gaslight Co.* v. *Norwalk*, 63 Conn. 495, 528, 28 Atl. 32; *Swearsky* v. *Stanley Dry Goods Co., Inc.*, 122 Conn. 7, 12, 186 Atl. 556; note, 23 A. L. R. 1016. There is nothing in the subordinate facts which indicates that the process of tank steaming, properly carried out, is of so dangerous a nature as to cast upon the defendant the duty of supervising the work. It does not involve the use of a flame or spark, which is the only possible cause of an explosion.

There are no facts found which justify a conclusion as to the precise manner in which the explosion occurred. The only possible explanation is that the contractor was negligent. The negligence of the independent contractor, the position occupied by both Gruntler and Leavitt and Beckwith, is not and cannot be the basis of the plaintiff's action against this defendant. "It is not claimed here that the injury to the plaintiffs arose from the due *performance* of the contract. On the contrary, it resulted from the *breach* of the contract, by the contractor not doing his work

with suitable care." *Lawrence* v. *Shipman,* 39 Conn. 586, 589. As was said in *McFarlane* v. *Niagara Falls,* 247 N. Y. 340, 348, 160 N. E. 391, 57 A. L. R. 1, quoted in *Beckwith* v. *Stratford,* 129 Conn. 506, 512, 29 Atl. (2d) 775, "What was dangerous and wrong did not inhere in the work contracted to be done, but in the manner of its doing." The trial court could not reasonably reach the conclusion upon which it based its judgment for the plaintiff. The plaintiff has had its day in court. The case has been fully tried and in all reasonable probability a prolongation of the litigation would not enable the plaintiff to establish a right to recover. Judgment should have been rendered for the defendant. See *Sweet* v. *Sweet,* 97 Conn. 693, 695, 118 Atl. 36.

There is error, the judgment is set aside and the case is remanded with direction to enter judgment for the defendant.

In this opinion the other judges concurred.