ALGONQUIN GAS TRANSMISSION CO. *v.*
GEORGE W. LANGE ET AL.

SUPERIOR COURT          TOLLAND COUNTY          FILE No. 5859

ALGONQUIN GAS TRANSMISSION CO. *v.*
LEO A. NELSON ET AL.

SUPERIOR COURT          TOLLAND COUNTY          FILE No. 5860

8

Memorandum filed February 23, 1954.

*Day, Berry & Howard,* of Hartford, for the plaintiff.

*Birmingham & Kennedy,* of Hartford, for the defendants in both cases.

*Rubinow & LaBelle,* of Manchester, for the defendants in No. 5859.

*Killian & Krechevsky,* of Hartford, for the defendants in No. 5860.

*Federal Land Bank of Springfield,* pro se, in No. 5860.

KING, J. Each of these cases was a condemnation proceeding brought by the petitioner, a natural gas pipe line company (pursuant to the provisions of what is now chapter 264a of the 1953 Supplement to the General Statutes) for the condemnation of a pipe line easement across tracts of land located in the town of Andover and belonging, respectively, to the respondents in the respective two proceedings.

After a number of hearings, the committee of three (appointed by the Superior Court under the provisions of what is now Cum. Sup. 1953, § 1963c) rendered a report in case No. 5859 which is No. 24 in the file in that (Lange) case and a report and amendment thereto in case No. 5860 which are, respectively, No. 26 and No. 28 in the file in that (Nelson) case.

In each case the basic question is whether injury to property, mostly personal, directly caused by particular methods employed in the construction of the pipe line, should be compensated for in this proceeding. In each case the claimed damage was, generally, the frightening of poultry by blasting and other construction operations which was claimed to have resulted in reducing egg production and in stunting and slowing up the growth of the poultry. In the Nelson case the additional claim was made that the respondents were forced to abandon their poultry business, although the committee found this claim was not proven. The problem is clearly stated by the committee in paragraphs 5 through 8 and paragraph 11 of the report in the Lange case and in paragraph 11 of the report in the Nelson case.

It should be mentioned parenthetically that the paragraphs of the report and amendment thereto in

the Nelson case were unnumbered, and to facilitate precision of reference in this memorandum of decision, the court has numbered the paragraphs consecutively in lead pencil. This has disclosed an error in reference in the second paragraph of the amendment to the Nelson report in that there is no page six of the original Nelson report (No. 26), and it is obvious that what the committee intended in its amendment (No. 28) was to substitute for the eighth paragraph of the original report (commencing on page 2) paragraphs 3 through 7 of the amendment to the report. Since none of this was mentioned by counsel in oral argument, the court assumes that there is no dispute between the parties regarding the intent of the committee as to the effect of the amended report on the original report.

As more particularly set forth in paragraph 11 of the Lange report, evidence was received by the committee as to damages to the poultry, through disturbance and fear due to the noise and other incidents of the pipe-laying and clean-up operations where it was asserted that maturity of the pullets was delayed and their egg production retarded, the size of eggs adversely affected and the body-weight of poultry sold reduced. Evidence as to these claims was permitted to the respondents (Lange et al.), but with the reservation and understanding that the committee regarded any right of recovery upon these items under this (condemnation) petition as involving a question of law for the court and not within the scope of the committee's powers. "If the Court should rule that recovery upon these claims or any of them may be had in this proceeding, reference back to the Committee for further report may be had."

In paragraph 7 of the report of the committee in the Nelson case the following language occurs: The construction of the pipe line "involved use of large excavating and other machinery and much blast-

ing . . . . The noise and other incidents of these operations affected the poultry, reducing egg production and their weight development and caused the death of some as a result of fright from the blasts. Commencing early in September with sale of hens from the brooder house Nelson sold all of his poultry and ceased to continue the business."

Further on in the same (Nelson) report, paragraph 11 reads in part as follows: "In the course of the hearing claims were made by the respondents (Nelson et al.) for the recovery of damages for losses by death of hens, loss of weight as to hens, pullets and roosters sold; also for breaks in water pipes and claimed cracks in foundation of a poultry house. Evidence was permitted to the respondents as to these claims, but with the reservation and understanding that any right of recovery upon these items under this petition involved a question of law not within the scope of the Committee's powers. Consequently no further report upon these claims is now made. If the Court should rule that recovery upon them or any of them may be had in this proceeding, reference back to the Committee for further report may be made."

The fundamental contention of the respondents is that the final clause of Cum. Sup. 1953, § 1960c (reading that in condemnation proceedings by a natural gas company "such corporation shall be held to pay all damages that may arise to any person or persons from any such taking") authorizes the inclusion in the condemnation award of all damages to real or personal property in fact resulting from the construction of the line whether occurring before or after the taking.

The fundamental contention of the petitioners is that § 1963c, and especially the first sentence thereof, limits the damages to be allowed in condemnation

proceedings to damages arising "from any taking . . . of any land, right of way, easement or other interest in land," and that this refers only to damages incident to the taking of the land and not to (1) damages caused by actual construction operations after such taking or (2) damages caused to personal property of any kind. For reasons which will hereinafter appear, the first claim, only, need be considered in these cases. The second need not be considered, although it may be noted the statement is susceptible of an interpretation which would be in conflict with the rule in *Harvey Textile Co.* v. *Hill*, 135 Conn. 686, 689.

The decision of these cases rests on the proper construction of our particular condemnation statute. Cases from other jurisdictions are of little help. No constitutional question is involved since the respondents, as hereinafter set forth, had a full, adequate and complete remedy available at common law.

In Connecticut, damages in condemnation proceedings are assessed as of the date of the taking. *Clark* v. *Cox*, 134 Conn. 226, 229. And the "taking" "means the accomplishment of the legal step whereby the landowner's right of possession is terminated." Ibid.

Here the file discloses that the petitioner sought and obtained a right of immediate entry under the provisions of § 1964c. While abandonment or dismissal was still possible, even if it occurred it could not, under the provisions of § 1964c, operate to leave the landowner without just compensation for any damage sustained by reason of the acquisition and utilization of the right of immediate entry. Unattacked portions of the reports of the committee make it clear that the line was laid and is now permanently in operation, thus eliminating any question of abandonment or dismissal of proceedings.

The confusion here, if there be any, arises because construction of the line took place during the period of temporary occupancy. Had the "entry upon and use" made of the temporary easement (such as construction of the pipe line and blasting incident thereto) caused damage to the respondents, there might well have been, under the express terms of § 1964c, a right of recovery (whether entirely by condemnation proceedings need not be decided) from the money deposited, if, but only if, there was an abandonment or a dismissal of the proceedings or no award of damages should be made.

Where, as here, proceedings went on to a final judgment, the deposit is applicable "for the purpose of the payment of any award of damages which may be made, with interest thereon from the date of such entry upon [such] property." § 1964c. The distinction between § 1963c and § 1964c is obvious and basic. Thus the provisions of § 1963c forbid entry upon the land prior to a final judgment except under the special provisions of § 1964c relating to a temporary right of immediate entry.

If there is a temporary invasion and no final taking it is obviously fair that compensation be made for damages incident to such invasion, including any construction damage, and it is obvious that these damages (by whatever method they were ascertained) would be known by the time the condemnation proceedings were dismissed or abandoned. But damages incident to the particular activities of a condemnor in its use of a permanent easement might not occur until long after the condemnation award had been made (and satisfied) and necessarily could not be included in it.

Had no right of immediate entry been obtained here, under the express provisions of § 1963c the property could not have been entered upon or used

until the payment of the condemnation award. This would necessarily defer construction until after the award. And it would necessarily follow that no construction damage of the type claimed here could have been included in the award. Whether there would have been blasting, and to what extent, and with what, if any, resulting damage, would have been unknown until after construction. Consequently, any such construction damage would have had to be compensated for, if at all, in some other subsequent independent proceeding. Damage necessarily flowing from the use of the easement for a pipe line would be foreseeable, and, so, would be allowed for, and was allowed for here, in the award, which is based on the state of affairs as of the date of the taking. But damage not then foreseeable would not, and could not, be allowed for in the condemnation award. Only elements of damage which are "a necessary, natural or proximate result of the taking" can be considered. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 688.

This is the crux of the matter and is dispositive of the case adversely to the contentions of the respondents. Their only possible right to construction damage in a condemnation award is given as incident to a temporary easement under § 1964c and this provision is operative only if the proceedings are dismissed or abandoned prior to any final award. Admittedly nothing of that kind took place here.

The respondents were deprived of possession of their respective properties at a date not later than the commencement of actual construction of the line, which the committee (paragraph 6 of Lange report and paragraph 7 of Nelson report) found to be in August of 1951. This was, under the facts of this case, the latest time of the actual entry under § 1963c, and, so, of the actual and perfected taking where, as here, there was no abandonment or dis-

missal but a final, complete exercise of the right of eminent domain. *Housing Authority* v. *Pezenik,* 137 Conn. 442, 447.

And the damages would be the "value of that property [taken] plus interest thereon from the date when [the condemnee] was deprived of possession." Ibid. The second sentence of § 1963c provides that the "committee . . . shall view the property in question, hear the evidence, ascertain the value, [and] assess just damages to the owner . . . of such property . . . ." And the seventh sentence provides that all this must be done, and the award paid, before entry upon and use of the land except for the temporary occupancy provided for by § 1964c.

Obviously the procedure (apart from that for a temporary occupance under § 1964c) involves no allowance for damage to any property (real or personal) caused by the particular methods of construction ultimately adopted, but only an allowance for damage by reason of the easement condemned and the foreseeable use thereof. *Housing Authority* v. *Lustig,* 139 Conn. 73, 76. This the committee allowed. (Pars. 7 and 8 of Lange report and par. 8 of Nelson report as amended).

In other words, the only damage which the committee could allow for is that damage which could have been allowed for had the award been made under § 1963c, prior to entry upon and use of the land. *Gabriel* v. *Cox,* 130 Conn. 165, 168.

The matters as to which evidence was received by the committee but for which no allowance was made by the committee in its award of damages were, as previously noted, damages, largely to poultry, because of incidents of the laying of the line both in actual construction and in cleaning up operations after the pipe had been laid. All of these ele-

ments of damage occurred long after entry, were not then foreseeable, and could not have been included in an award made under § 1963c prior to entry.

It is obvious that these disallowed elements of damage, if recoverable at all, were not connected with the mere occupancy of the easement taken, nor were they necessary and foreseeable consequences of the use for a pipe line. They were consequential upon, and arose from, the particular methods of construction employed (i.e., use made) of the easement after the "taking" and entry. They were unforeseeable and unascertainable as of the time of the "taking." There is no claim or suggestion that this poultry was actually on any part of the easement, and of course it would have no right so to be, after the possession had passed to the petitioner and the "taking" had occurred. Any liability for these items of damage would be the proper subject of another action.

This of course includes the claim of the respondent Nelson that he was compelled to abandon his poultry business. Even if the committee was in error in finding this element not proven, it still remains that, if true, the necessity of abandonment arose, not from the presence of a pipe line, even in full operation, but from unforeseeable activities of the petitioner (and unforeseeable consequences of such activities) incident to the construction thereof.

These motions for remand were based solely on the statements as to the controverted elements of construction damage made in the reports of the committee as hereinbefore quoted. No claim was made that these statements were inadequate, nor was any additional information given. It follows that these motions for remand must stand or fall on the aforesaid statements made in the committee's reports.

There is no suggestion that any evidence was offered that any of this claimed damage was foreseeable as of the date of the taking so that it could be found to be necessary, natural or proximate consequence of the taking of the easements and their use for a pipe line.

On the contrary, the respondents, as to these controverted items, merely offered evidence of claimed actual damage resulting from the particular construction methods adopted by those engaged in laying this particular pipe line. All this was long after the taking. It is obvious that the respondents, as far as these controverted items are concerned, seek damages for negligence in the laying of a pipe line, not damages for taking an easement and maintaining a pipe line in it. For the latter, the committee's reports show full and legal compensation was awarded.

It should be noted, however, that the result reached here is no adjudication that the respondents were without remedy in the event that they sustained injury by the tortious conduct of the petitioner in the construction of its line. But the remedy lay in a separate and independent action since it was not a necessary incident to the use of the easement. It is not the use, but the abuse, of the easement which caused the damages which these respondents claim.

Furthermore, damage, whether to real or personal property, is recoverable only on the basis of fault, even though where, as here, it is alleged to have resulted from the use of explosives that fault need be only in inverse ratio to the care required in the use of the explosive. *Scranton* v. *L. G. DeFelice & Son, Inc.*, 137 Conn. 580, 584. This distinction would be obvious had the damage here occurred, not at the time of the construction, but five years after the line had been in operation, as from an explosion in the line.

· The distinction must be kept in mind and honored because of the right of jury trial which is guaranteed by our constitution. It is inapplicable to a condemnation proceeding but is applicable to a tort action. For this reason, if for no other, neither party could be deprived of this right, although the court of course has no occasion to, and does not, pass on the question of whether, while insisting that these matters be considered and allowed for in the report of the committee, the respondents have not permitted the Statute of Limitations to run against them.

Again, if the pipe line was laid by an independent contractor, and the damage was due to fault on his part in the particular methods and instrumentalities he employed in laying the line, as distinguished from damage incident to the carrying out of the contract itself even with due care, the liability might turn out to exist only on the part of the independent contractor, as distinguished from the petitioner, under the rule of cases such as *Lawrence* v. *Shipman,* 39 Conn. 586, 589, and *Millstone Corporation* v. *Laurel Oil Co.,* 131 Conn. 636, 639. This of course is an additional reason why a separate action, apart from condemnation proceedings, and with a right to a jury trial, must be utilized in a claim for construction damage or for any other damage which could not have been allowed for under § 1963c had there been no temporary occupancy under § 1964c.

The respondents express apprehension that the petitioner will claim in such an independent action, if instituted, that these items of damage, if recoverable at all, were properly allowable only in the condemnation award. The standing of counsel for the petitioner is such that as a practical matter no such claim would be made. But that aside, it is extremely unlikely that the petitioner would attempt such a maneuver, since it would obviously be an act of bad

faith on its part from which it would be estopped by its claims in this condemnation proceeding. And as previously pointed out, any such claim would be unsound in law.

It follows that as far as the respondents in the Lange case are concerned there is no occasion for any further finding by the committee on the basic question of damages hereinbefore determined, and consequently part (a) of the respondents' "Motion for Reference to Committee for Further Report and for Extension of Time" (No. 25) is denied.

Before determining part (b) of that motion (No. 25), it is necessary to consider petitioner's "Motion to Correct Committee Report" in the same (Lange) case. This motion (No. 26), seeks additions to the committee's report by setting forth the subordinate facts from which the committee arrived at the ultimate fact as to the difference in value (i.e., damage), as set forth in paragraph 9 of the report. Although filed with the court, this motion was properly addressed to the committee, rather than to the court, under Practice Book, § 171. And the committee, of course, takes no action on it. Under Practice Book, § 175, the timely filing of this motion would automatically extend the time in which the respondents might file exceptions to the report until two weeks after the refiling of the report by the committee, since the committee might make a further, or altered, report in acting on petitioner's motion (No. 26).

The situation is further complicated because it appears that petitioner's motion (No. 26) was not filed within the time (two weeks after the filing of the report) allowed by Practice Book, § 171. The committee's report was filed on December 5, 1953, while the petitioner's motion (No. 26) was not filed until December 21, 1953. The fourteenth day after December 5 was Saturday, December 19, 1953. De-

cember 21 was not "within two weeks." Practice Book, § 209; *Lamberti* v. *Stamford,* 131 Conn. 396, 399.

However, under Practice Book, § 178, for good cause shown, either the committee or the court may extend the time for filing such a motion. As yet, petitioner has made no effort to secure such an extension from either the committee or the court. But apparently, for good cause, such an extension may be granted at any time, by either the committee or the court, at least before the acceptance of the report. Consequently, petitioner's motion (No. 26) may yet become operative, and, if it does, the committee may make some or all of the corrections sought in it. This might result in a further report. It is for this reason that part (b) of respondents' motion (No. 25, asking "that the Court extend until two weeks after the filing of the further report, the time within which the . . . respondents may file a motion to correct the report and exceptions to the finding"), in the interests of an over-all just disposition of the case, should be, and is, granted. In the event that (1) the petitioner fails successfully to prosecute its motion No. 26, or (2) that motion is denied in its entirety by the committee, the respondents may move for judgment accepting the report and thus bring the matter to an end.

In the Nelson case the respondents have filed a most peculiar motion (No. 29) in which they request (1) judgment on the report and (2) a reference back to the committee for a further report as to the foregoing construction damage items. Obviously this procedure is impossible. Either judgment should be entered on the report or it should not be. There is no provision for further condemnation awards after judgment.

However, as previously set forth, there should be no remand as requested. And in this (Nelson)

case no obstacle appears to the entry of judgment on the report. Therefore so much of the respondents' motion No. 29 as asks that judgment be entered on the report is granted and the balance of the motion is denied.