STANLEY BONCZKIEWICZ, ADMINISTRATOR (ESTATE OF EDWARD J. BONCZKIEWICZ), ET AL. *v.* THE MERBERG WRECKING CORPORATION ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and BORDON, Js.

Argued June 9—decided July 18, 1961

*Donald F. Keefe,* for the appellants (defendants Feinstein et al.).

*Charles G. Albom,* with whom were *Herbert Watstein* and, on the brief, *Frank L. Vecchiolla,* for the appellees (named plaintiff et al.).

KING, J. The plaintiffs Pearl Bonczkiewicz, Phyllis Young, Ronald Bonczkiewicz, a minor, and Vicky Lee Young, also a minor, sued to recover damages for personal injuries, and the plaintiff Stanley Bonczkiewicz, as administrator of the estate of Edward J. Bonczkiewicz, a deceased infant, sued to recover damages for the decedent's wrongful death. The injuries and death were claimed to have been caused by the negligence of the defendants in the demolition of a building on West Main Street, in Meriden, in the heart of the retail shopping district. There was little difference in the claims of proof of the parties as to most of the circumstances of the accident. The interior of the building had been almost completely destroyed by fire on April 3, 1958. The walls, especially the front wall which immediately abutted the public sidewalk, were so weakened that they were in danger of falling unless demolished.

After the fire, Louis Merberg of the Merberg Wrecking Corporation approached George Kaplan, principal officer of a tenant, Growers' Exchange, Inc., hereinafter referred to as Growers. It conducted a supermarket which was the largest of the five retail stores which had occupied the building. Kaplan was a brother-in-law of the defendant Sarah Kaplan, who, with the defendant Celia Feinstein, owned the building. Louis Merberg, on behalf of the wrecking corporation, sought the job of razing

the remains of the building. George Kaplan negotiated with Merberg the contract of demolition quoted below.[1] The defendants Sarah Kaplan and Celia Feinstein, in their answer, denied the allegation in the complaint that they had engaged the Merberg Wrecking Corporation to demolish the building. The contract is in the form of a letter from Merberg Wrecking Corporation which purports to have been addressed to the defendants Sarah Kaplan and Celia Feinstein and to have been accepted by them, although their actual signatures do not appear on the acceptance. The original defendants in this action were Sarah Kaplan, Celia Feinstein, the Merberg Wrecking Corporation, Louis Merberg, Growers, and the city of Meriden. For the purposes of this appeal, it is unnecessary to differentiate between Louis Merberg and Merberg Wrecking Corporation, and for convenience the corporation will be referred to as Merberg.

Merberg erected a plywood fence, about six feet high, along the inner edge of the sidewalk. At about this time, ropes which had been placed around the sidewalk to prevent pedestrians from using it were taken down by parties unknown, so that the sidewalk was thereafter left open to pedestrian travel.

---

[1] "We will furnish all the plant, labor, equipment and insurance to demolish and remove from the site the building and contents known as 80 West Main Street, Meriden, Connecticut.

"We will remove all the interior and exterior walls level with the existing grade excepting any party walls or other walls you may so direct us to leave intact, and clean out the entire area to the cellar floor but not including the concrete cellar floor. We will also erect a fence around the entire property to protect the passing public.

"All the salvage shall become the property of this contractor, and upon completion of operations we are to receive the lump sum of [$7000].

"Our price includes securing the necessary permits as well as removing the respective utility services."

On the date of the accident, April 18, 1958, some days after demolition under the contract had begun, one unsupported pillar of the front wall remained standing near the inner edge of the sidewalk. The plaintiffs, apart from the plaintiff administrator, parked their car in the vicinity and walked along the sidewalk. There were no signs warning against pedestrian use of the walk. The infant decedent, Edward Bonczkiewicz, was being wheeled by his mother, Pearl, in his carriage. The plaintiff Phyllis Young looked through a hole in the fence and saw a crane pushing debris against the fence. Alarmed, she went to Pearl, urging that they all leave the scene. At this moment, the remaining upright pillar toppled over onto the fence and fell with it and through it onto the sidewalk, crushing the infant Edward to death and injuring the others.

During the course of the trial, the plaintiffs orally agreed to give covenants not to sue to (a) Merberg Wrecking Corporation and Louis Merberg, (b) the city of Meriden, and (c) Growers, with the express oral understanding with each of these covenantees that when the written covenants not to sue had been finally drafted and executed, they would contain express reservations of rights in the plaintiffs against the defendants Celia Feinstein and Sarah Kaplan, the owners of the building. Subsequently, such covenants were drawn and executed. At the time the oral agreements as to the covenants were made, the defendants Celia Feinstein and Sarah Kaplan warned Merberg that they would look to it for indemnification if judgment in this case ran against them. Thereafter, the trial continued against the defendants Celia Feinstein and Sarah Kaplan only, and they are hereinafter referred to as the defendants. The total of the amounts re-

ceived by the plaintiffs under the covenants was $40,000, of which $36,000 was paid by Louis Merberg and the Merberg Wrecking Corporation. The court instructed the jury to deduct, in arriving at the amount of damages recoverable by a given plaintiff, the payments received by him or her. No complaint is made of the charge in this respect. Quite obviously, it was as a consequence of this instruction that the jury returned a defendants' verdict in the case of the plaintiff Ronald Bonczkiewicz and in that of the plaintiff Vicky Lee Young. See *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 95, 92 A. 883.

The jury returned a verdict against the defendants in favor of the plaintiff Pearl Bonczkiewicz in the amount of $8000, in favor of the plaintiff Phyllis Young in the amount of $8000, and in favor of the plaintiff Stanley Bonczkiewicz, as administrator of the estate of the deceased infant, in the amount of $6500. From the judgments entered on these verdicts, the defendants have taken this appeal. Their main claim, as stated in their brief, is that the covenant not to sue Merberg operated, as a matter of law, to release them, as owners of the building, from any liability to any of these plaintiffs. Two further claims are that the employment of a financially responsible independent contractor under the contract in this case removed from the defendants any duty of protecting third parties and left that duty entirely on the independent contractor and that the charge was erroneous in leaving to the jury the question whether the demolition in this case was in fact a hazardous undertaking even if it was done with due care and in accordance with the contract provisions. For convenience, we consider the latter claims first.

The court charged that Merberg's relationship

to the defendants was that of an independent contractor and that there would be no liability on the part of the defendants for injuries caused by Merberg's negligence in carrying out the contract. See *Millstone Corporation* v. *Laurel Oil Co.,* 131 Conn. 636, 639, 41 A.2d 711; *Jacob* v. *Mosler Safe Co.,* 127 Conn. 186, 189, 14 A.2d 736; *Alexander* v. *R. A. Sherman's Sons Co.,* 86 Conn. 292, 299, 85 A. 514; *Lawrence* v. *Shipman,* 39 Conn. 586, 589. The court also charged upon and left to the jury the question whether the contract called for work of a character such that, even if it was duly performed, it would obviously and naturally, even though not necessarily, expose pedestrians on the sidewalk to probable injury unless preventive measures were taken. The court further charged the jury that if they found that the work was of that character and that the defendants knew or in the exercise of reasonable care should have known it and negligently failed to take preventive measures or cause them to be taken, the defendants would be liable for the injuries proximately caused by their negligence. The charge here followed our law as laid down in cases such as *Millstone Corporation* v. *Laurel Oil Co.,* supra; *Campus* v. *McElligott,* 122 Conn. 14, 18, 187 A. 29; *Alexander* v. *R. A. Sherman's Sons Co.,* supra; *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 528, 28 A. 32; see note, 23 A.L.R. 1055.

Contrary to the defendants' claim, there was evidence from which the jury could find that even though the demolition work was done with reasonable care and in accordance with the terms of the contract, the proximity to the public sidewalk of the standing front wall made the demolition of the wall a task which would obviously and naturally, even if not necessarily, expose pedestrians to prob-

able injury from being struck by falling parts, unless preventive measures were taken. Although the jury could find that the fence as erected was in conformity with the contract requirement, they could also find that the fence, though adequate to keep pedestrians from straying into the area in which demolition was taking place, was inadequate to prevent heavy portions of the building from falling outside the area of demolition and onto the sidewalk, and that further preventive measures should have been taken to guard against such an occurrence, measures such as roping off or otherwise closing the sidewalk to pedestrian travel or erecting steel sheds over the sidewalk. The defendants' claim that expert testimony was required on this point is without merit. No specialized knowledge was needed. See *Van Detti* v. *Parsons Bros., Inc.,* 146 Conn. 282, 287, 150 A.2d 200. The court properly refused to give the defendants' requests to charge, the effect of which would have been to take from the jury, as a matter of law, the question of the defendants' negligence in failing to take further preventive measures to avoid danger to pedestrians. *Campus* v. *McElligott,* supra; *Swearsky* v. *Stanley Dry Goods Co.,* 122 Conn. 7, 12, 186 A. 556; *Norwalk Gaslight Co.* v. *Norwalk,* supra. The defendants place great reliance on *Swearsky* v. *Stanley Dry Goods Co.,* supra. The opinion in that case gives, as an illustration of a situation where the rule promulgated in the charge in the instant case would be applicable, "the construction or repair of the walls of a building abutting the street line, [and] the repair or erection of signs or awnings on such walls, etc." Id., 13. The *Swearsky* case does not support the defendants' claim.

The main claim of the defendants, and that most

seriously stressed, is that Merberg was "primarily" liable, that the defendants were only "secondarily" liable, and that as a result the defendants were necessarily released from liability when the plaintiffs settled with Merberg. This claim is raised in two ways. First, it is raised in connection with the defendants' assertion that the verdict was against the evidence and that their motion for judgment notwithstanding the verdict should therefore have been granted. Second, it is raised by attacking the refusal of the court to charge, as requested by the defendants, that if the plaintiffs' injuries were caused by Merberg's negligence in the manner in which it performed the demolition contract, the plaintiffs, having settled with Merberg, cannot recover from the defendants. The vice in the requested charge is that it incorrectly assumes that the mere fact that Merberg was negligent in the manner in which it performed the contract would establish that the defendants' liability was merely secondary. The requested charge ignores the possibility, established by the evidence and contemplated by the charge as given, that the defendants could be held liable for personal negligence in the failure to take proper preventive measures and that such negligence was wholly independent of any negligence of Merberg in the manner in which it performed the contract. The defendants might be joint tort-feasors with Merberg but their liability was not necessarily secondary. While a release of one joint tort-feasor releases the others, a covenant not to sue does not. *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 79, 86, 92 A. 883. Even if, as the defendants' argument assumes, a covenant not to sue a person primarily liable for a tort discharges a person secondarily liable, the jury could find that the de-

fendants' liability was not secondary and that, regardless of whether Merberg was negligent, the settlement with Merberg did not discharge the defendants. The court did not err in denying the motion for judgment notwithstanding the verdict, so far as the motion was predicated on the claim that the settlement with Merberg released the defendants, nor did it err in refusing the request to charge.

As previously pointed out, the complaint alleged that the defendants entered into the demolition contract with Merberg, and the defendants' answer denied this allegation. Since proof came in without objection that George Kaplan actually negotiated the contract which purported to be between Merberg and the defendants, George's agency for the defendants in entering into the contract was necessarily in issue. See Practice Book § 114; *Woodruff* v. *Perrotti,* 99 Conn. 639, 644, 122 A. 452. The defendants took two exceptions to the charge in connection with the issue of George's agency, and both exceptions were pursued in the assignments of error. The basic claim of error presented by the two exceptions is most unusual. It is that, although the question of George's agency was in issue under the pleadings, the court should not have submitted the issue to the jury, since the court knew or should have known from certain conferences in chambers that the defendants intended to admit the agency. We need not speculate whether the submission of the issue could have been harmful to the defendants on the theory, suggested in their brief, that it was calculated to antagonize the jury because the evidence had made the agency so manifest that it was apparent that the denial of it in the answer was unjustifiable. The answer to the defendants' claim is that the court was entitled to submit to the jury

the issues under the pleadings. Indeed, it could hardly have done otherwise under the circumstances. If the pleadings were to be changed, it should have been by written amendment. The record makes clear the efforts of the court during the trial to ascertain the defendants' position on this issue and the failure of the defendants successfully to explain their position. See *Stavnezer* v. *Sage-Allen & Co.*, 146 Conn. 460, 461, 152 A.2d 312. Whatever counsel for the defendants may have said to the court in chambers, the defendants' position obviously was not made clear to the court. See *Bevins* v. *Brewer*, 146 Conn. 10, 13, 147 A.2d 189; *Eamiello* v. *Piscitelli*, 133 Conn. 360, 363, 51 A.2d 912. Had the defendants conformed to the rules of pleading in preparing their answer (Practice Book §§ 105, 106), no difficulty would have arisen. The court did not err in its charge on the issue of George Kaplan's agency.

The plaintiffs introduced certain of the larger doctors' bills as exhibits, with a statement by counsel that while all the doctors would not be called, he had summoned, and expected to have present, two of the doctors, whom he named. Neither of the two doctors appeared in court. The defendants subsequently moved that all the exhibits be stricken. The court might properly have granted the motion so far as it sought to eliminate evidence admitted under an unfulfilled promise to connect, especially if no explanation satisfactory to the court was given of the failure to have the two doctors in court. *Hemingway* v. *Cozzolino*, 117 Conn. 689, 690, 169 A. 621. The plaintiffs themselves, however, directly testified, at least in the case of the larger bills, that they had been incurred as a result of the injuries received. The other bills are too trivial in amount

to merit consideration. Corroboration as to the attendance of the two doctors was also furnished by the hospital records which were admitted in evidence. The defendants presented no medical testimony. In the discretion of the court, the bills, if unreasonableness did not appear on their face, could be admitted under the rule of cases such as *Flynn* v. *First National Bank & Trust Co.*, 131 Conn. 430, 436, 40 A.2d 770, and *Carangelo* v. *Nutmeg Farm, Inc.*, 115 Conn. 457, 462, 162 A. 4. The refusal to strike out the exhibits was, under the circumstances, not erroneous.

The other claims of error do not require discussion.

There is no error.

In this opinion the other judges concurred.