## NORMAN J. ROBINSON, ADMINISTRATOR, *vs.* HENRY R. BACKES.

Third Judicial District, New Haven, January Term, 1917.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

A verdict should be set aside only when its manifest injustice is so plain as to clearly indicate that the jury have disregarded the rules of law applicable to the case or were influenced by prejudice, corruption, or partiality in reaching their conclusion.

In passing upon this question the trial judge exercises a legal discretion, and his action will not be disturbed on appeal unless it clearly appears that such discretion was abused.

One obviously immovable limitation upon the exercise of this discretion is the constitutional right of trial by jury, which, in a proper case, includes the right to have issues of fact, as to which fair-minded men may reasonably differ, passed upon by the jury and not by the court.

The evidence in the present case reviewed, and the action of the trial court in setting aside a verdict for the defendant *held* to have been erroneous.

Argued January 19th—decided February 21st, 1917.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *Tuttle, J.;* verdict for the defendant, which the trial court set aside as against the evidence, and appeal by the defendant. *Error; judgment to be entered on verdict for the defendant.*

On November 6th, 1915, the plaintiff's decedent, Adelbert Robinson, a foreman in charge of a gang which was repairing the highway between North Haven and Wallingford, was struck and killed by a seven-passenger motor-car owned by the defendant and then driven by him at a rate of from twenty to twenty-five miles an hour.

There was much travel on the highway on that day,

and the road was smooth, hard, dry and straight for a considerable distance north and south of the place of the accident. There was a single trolley track on the extreme east side of the traveled way; in the middle, a macadamized surface eighteen feet wide offering the natural path for motor vehicles, and west of that a strip of softer roadway five feet wide. About nine feet in width of the easterly side of the macadamized part of the road was occupied by a large dump-cart, used by the repair gang, with its two horses headed northerly. Shortly before the accident one Palmer, driving a motor delivery wagon from the north, spoke to the decedent, who was then at work south of and behind the dump-cart, and stopped his delivery wagon on the extreme west side of the road, at a point variously estimated as from thirty to one hundred feet beyond the dump-cart, partly on the grass outside of the traveled way and partly on the five-foot strip of comparatively soft roadway. Then he looked back for an instant and saw the decedent coming diagonally toward him and about at the middle of the road. This was the last that any witness saw of the accident except the defendant and his sister, who sat with the defendant on the front seat of the car. Their evidence is that as they approached the place, they were traveling on the right-hand side of the macadamized part of the roadway going toward North Haven; that they saw the dump-cart on the left and the Palmer delivery wagon on the right, and, as the defendant says, another man on the right, in the rear of the delivery wagon. They say that Edward Backes, the defendant's brother, was driving his car in the same direction and some three hundred feet ahead of them; that they observed the brother's car pass between the dump-cart and the delivery wagon, turning slightly toward the middle of the macadam to give clearance to the delivery

wagon; that they sounded their horn and followed the same path, and that when they were about opposite the dump-cart the decedent came out from behind the cart walking, with his head down and his back toward them, diagonally across the road. They testified that in the effort to avoid the decedent the defendant swerved his car violently to the left, and that the right-hand lamp of the defendant's car struck the decedent. Shortly after the accident one Wheeler, a State policeman, arrived on the spot, made a number of measurements and observed wheel tracks made by an automobile. These measurements and observations are relied on to contradict or modify the evidence of the defendant and his sister in certain material respects. Other facts are stated in the opinion.

*Jacob P. Goodhart* and *Samuel A. Persky*, for the appellant (defendant).

*Harrison Hewitt* and *Charles E. Clark*, for the appellee (plaintiff).

BEACH, J. There is only one question of law in this case—how far a trial court may go in setting aside the verdict of a jury as against the evidence. The rule itself is plain, although it may sometimes be hard to say whether it has been properly applied to a given case.

"It is the duty of the trial court in its relation to the jury to protect the parties by setting aside a verdict where its manifest injustice is so plain as to clearly indicate that the jury has disregarded the rules of law applicable to the case, or were influenced by prejudice, corruption, or partiality in reaching a decision." *Mc-Kone* v. *Schott*, 82 Conn. 70, 71, 72 Atl. 570; *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 96 Atl. 169; *Baril* v. *New York, N. H. & H. R. Co.*, 90 Conn. 74,

96 Atl. 164. "The trial judge, in setting aside the verdict, was acting in the exercise of a legal discretion, and his action is not to be disturbed by us unless it clearly appears that the discretion was abused; and in passing upon the question of abuse great weight should be given to his opinion, and every assumption made in favor of its correctness." *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 20, 96 Atl. 169; *Cables* v. *Bristol Water Co.*, 86 Conn. 223, 225, 84 Atl. 928; *Loomis* v. *Perkins*, 70 Conn. 444, 446, 39 Atl. 797.

One obviously immovable limitation on the legal discretion of the court in such cases is the constitutional right of trial by jury, which in a proper case includes the right to have issues of fact, as to the determination of which there is room for a reasonable difference of opinion among fair-minded men, passed upon by the jury and not by the court. The question here is whether there was room for such a reasonable difference of opinion in respect of the issue of the defendant's negligence or of the decedent's contributory negligence. If so, the trial court erred in setting aside the verdict.

Upon the question of the decedent's contributory negligence, the plaintiff's contention is that when struck by the defendant's car the decedent was still behind the dump-cart, walking straight down the road and about the middle of the macadamized roadway; that he was entitled to assume that any vehicle coming from the north would not turn in behind the dump-cart and would keep on the right-hand half of that part of the highway, and so was not bound to look in that direction even if a signal had been sounded. It is claimed that the position of the decedent when struck is fixed by measurements taken by the witness Wheeler of the position of broken glass and of marks claimed to have been produced by the grinding of the decedent's

heels into the macadam. The plaintiff also claims to have established, by Wheeler's observation of automobile tracks, that the defendant began to swerve in toward the left-hand side of the macadam at some distance before he reached the dump-cart and invaded that part of the road behind the dump-cart where the decedent rightfully was, probably because he preferred to anticipate a possible movement of Palmer's delivery wagon by a wide sweep to the left rather than by slowing down and keeping on his own side of the road.

The defendant's contention, based on the testimony of Palmer and of the defendant and his sister, was that the decedent, when hit, had come out from behind the dump-cart, was walking diagonally across the macadamized roadway with his head down and his back toward the car, had already reached the middle, if not the right-hand side, of the macadam, and passed into the path of south-bound vehicles, and that reasonable care required him to have looked toward the north before doing so, especially as the defendant had given notice of his approach by sounding his horn. The defendant and his sister also maintained on the witness-stand that the defendant turned his car in toward the middle of the macadam in order to give more clearance to Palmer's car, intending to hold a straight course, that they were still on the right-hand half of the macadam, and that as they were passing the dump-cart the decedent walked out from behind it and toward the right-hand side of the road, and they say it was then that the attempt was made by a sudden swerve to the left to avoid hitting him.

There was a controversy as to how far behind the dump-cart the accident happened; but the dispute as to its exact location measured laterally across the highway was within very narrow limits. The heel-

marks locate the decedent at a point eight feet and two inches from the west rail of the trolley; that is about the middle of the road and within one foot of a line drawn from the west wheel of the dump-cart parallel with the middle line of the highway. This, of course, is not conclusive as to the exact fact, for if we assume that the marks were made by the decedent's heels being ground into the road, that may not have happened at the instant of the collision. So with the broken glass: it may not have fallen at the very place where it was broken, but may have been carried or thrown several feet before it reached the ground. The defendant's car was going somewhere near thirty feet a second and swerving sharply to the left, so that if the decedent and the broken glass were carried along for the space of a fraction of a second before being thrown to the ground, it is possible that the collision may have occurred well over on the right-hand side of the macadam, and not behind the dump-cart.

The importance of locating the exact spot where the decedent was hit and the direction in which he was then going was fully appreciated at the trial. The jury came back for more light on that point, and the last word of the trial court was that the jury would have to decide as best they could after searching their memories for the testimony as to just how far he had gotten and in just what direction he was moving.

It is apparent that the answer to the questions whether the decedent was behind the dump-cart, or on the defendant's side of the road, when hit, and whether he was then walking straight down the road, or diagonally across it, might reasonably determine the issue of contributory negligence, and might affect the issue of the defendant's negligence.

Was there room for a reasonable difference of opinion among fair-minded men as to how these questions

ought to have been answered on the evidence? Upon a careful examination of the evidence, aided by exhaustive briefs and arguments, we are constrained to say that there was, and that the court erred in setting aside the verdict of the jury.

There is error and the cause is remanded with direction to enter a judgment for the defendant in accordance with the verdict.

In this opinion the other judges concurred.