HELEN HUDIMA *v.* JACOB HUDYMA.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued May 5—decided July 6, 1944.

*Joseph Koletsky,* for the appellant (plaintiff).

*Ellsworth B. Foote,* with whom were *Richard C. Hannan* and, on the brief, *David E. FitzGerald, Jr.,* for the appellee (defendant).

JENNINGS, J. This was a suit for alienation of affections brought by a wife against her father-in-law. The trial resulted in a plaintiff's verdict for $5000 which the trial court set aside as against the evidence. The plaintiff appealed from this ruling and the questions are whether there was evidence to support the verdict and whether the damages were excessive.

The plaintiff was a divorcee, twenty-eight years of age, with one child, five years of age. She was introduced to Walter Hudima, twenty-two years of age, only son of the defendant, at a party and after a courtship lasting about a year and a half they were married. After a short honeymoon they lived in a furnished room on Crown Street in New Haven for about a month when, at the suggestion of Walter, they went to live with his parents. The plaintiff's child lived with the plaintiff's mother at this time. The premises occupied by the two families consisted of three rooms: two bedrooms and a combined living room and kitchen. They lived there from November, 1940, until July, 1941. The accommodations were inadequate and after unsuccessful attempts by all parties to find a rent the defendant bought a house on Congress Avenue, paying $3000 in cash and giving a first mortgage of $1500. The first floor was rented and the two families, including the plaintiff's child, occupied the second floor. This arrangement continued until July, 1942, when the plaintiff took her child and left. The immediate cause of this was a

quarrel with her mother-in-law. The plaintiff and Walter have not lived together since although he took her to the theater two or three times thereafter and saw her on other occasions. The plaintiff worked as a laundress during her marriage to Walter although she was not in good health. Walter worked as a chef and toward the end of the period of their living together was earning about $45 a week. The defendant was opposed to the marriage, did not like his daughter-in-law and made things very unpleasant for her both by his language and his treatment of her and her child while the two families were living together. He and his wife dominated their only son and their attitude and actions were calculated and intended to break up the marriage, in which, as has been stated, they were successful.

There was evidence to justify the jury in finding these facts. The trial court held that there was no evidence from which such alienation of affections as was alleged in the complaint could be inferred and that Walter's affections were not alienated in fact; and for these reasons it set the verdict aside.

The evidence was fairly extensive and the foregoing statement is a brief summary of the principal facts which reasonably could have been found by the jury. It would serve no useful purpose to include in this opinion a detailed analysis of all of the occurrences that took place. The decision of the determinative question must depend upon a reading of that evidence to see whether there was a reasonable basis for the conclusion reached by the jury.

It is the claim of the defendant that Walter's affections were not, in fact, alienated. This is not the ultimate test. "The gist of both the action for alienation of affections and that for criminal conversation is the same, the loss of the *consortium*. This is a

property-right growing out of the marriage relation and includes the exclusive right to the services of the spouse—and these contemplate not so much wages or reward earned as assistance and helpfulness in the relations of conjugal life according to their station— and the exclusive right to the society, companionship and conjugal affection of each other." *Valentine* v. *Pollak*, 95 Conn. 556, 561, 111 Atl. 869; *Maggay* v. *Nikitko*, 117 Conn. 206, 208, 167 Atl. 816.

As is usual in such cases, the fault was not all on one side and the trial court might well consider that the conduct and language of which the plaintiff complains, considered as isolated incidents, afforded but weak support for the verdict. The plaintiff was entitled, however, to have her case passed on by a jury rather than a court and, while the action of the trial court in setting aside a verdict is entitled to great weight (*Robinson* v. *Backes*, 91 Conn. 457, 460, 99 Atl. 1057), the verdict must stand if there is any reasonable evidence to support it. *Richard* v. *New York, N. H. & H. R. Co.*, 104 Conn. 229, 232, 132 Atl. 451; *Lessinger* v. *Miller*, 112 Conn. 679, 680, 152 Atl. 72. As stated above, it was not so much the seriousness of the particular incidents of which the plaintiff complained as their number, the domineering and coarse manner of the defendant and the fact that they continued for so long a time.

As a few of many possible examples, the jury could have found that the defendant habitually swore at her and in her presence; told her in Walter's presence that she was old enough to be his mother, told Walter that his mother came first and asked him "What the hell did you marry, did you marry a woman or what the hell did you marry?"; told the plaintiff's daughter that Walter was not her father and not to call him "Daddy"; interfered with Walter's taking the plain-

tiff out for diversion; physically assaulted her while she was ironing; and told her that if her aged parents came to visit her he would throw them downstairs. Life was finally made unbearable for her, she was obliged to leave with her child for that reason, and Walter refused to go with her. The resulting general picture of continual annoyance, abuse and interference by the defendant in the plaintiff's domestic affairs was sufficient to justify the conclusion of the jury, expressed by their verdict, that the actions of the defendant were the controlling and effective cause of the loss of consortium. *Miller* v. *Pierpont,* 87 Conn. 406, 410, 87 Atl. 785. Where that is the situation, the verdict must stand. *Amellin* v. *Leone,* 114 Conn. 478, 479, 159 Atl. 293; *Caldwell* v. *Danforth,* 124 Conn. 468, 471, 200 Atl. 577.

The amount of the verdict was not such as to call for interference by this court.

There is error and the case is remanded with direction to enter judgment on the verdict.

In this opinion MALTBIE, C. J., BROWN and DICKENSON, Js., concurred; ELLS, J., dissented.