Kenneth E. Jones *v.* Civil Service Commission of the City of New Britain

Cotter, C. J., Loiselle, Bogdanski, Longo and Healey, Js.

Argued April 6—decision released August 1, 1978

*Harold J. Geragosian,* for the appellant (plaintiff).

*Albert P. Proulx,* for the appellee (defendant).

Arthur H. Healey, J. The plaintiff has appealed from a judgment of the Court of Common Pleas dismissing his appeal from the action of the defendant civil service commission of New Britain (hereinafter the commission). The commission had sustained the action of the board of public works of New Britain (hereinafter the board) in its discharge of the plaintiff from his employment as a truck driver by the city of New Britain.

Although the plaintiff assigns error in the refusal to find certain material facts and in finding certain facts without evidence these assignments have not been briefed. Assignments of error which are not briefed are presumed to be abandoned. *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 70, 381 A.2d 559; *Johnson* v. *Flammia,* 169 Conn. 491, 498, 363 A.2d 1048.

The finding discloses the following facts which are necessary for our disposition of this appeal: The plaintiff was thirty-eight years of age and had been employed as a truck driver by the city of New Britain for some eleven years as of December 21, 1973. On that date the plaintiff and one Barry Squillacote, the director of public works, were present at a Christmas party for the employees at the public works garage. Words were exchanged between the plaintiff and Squillacote and a tussle ensued between them. Both had consumed alcoholic beverages prior to the tussle, both sustained minor injuries and both were taken to the hospital as a result. Although the police were summoned and an investigation was conducted, neither man was arrested although each lodged a complaint of assault against the other.

On December 26, 1973, the chairman of the board notified the plaintiff by mail that he was suspended, pending an investigation, because he was in violation of the civil service rules.[1] On December 27, 1973, the plaintiff requested a hearing before the commission. The plaintiff was notified by letter

---

[1] The letter informed the plaintiff that he was in violation of "Civil Service Commission Rule XIII, Discipline, Page 28, Paragraph 1: Section (4) Conduct toward superiors . . . unbecoming an . . . employee of the City of New Britain; and (6) Intoxication or unseemly conduct on duty or elsewhere so as to reflect discredit upon the City."

that the board would hold a hearing on January 2, 1974. By letter of January 9, 1974, the plaintiff was advised by the chairman of the board that he had been found guilty of the charges and that his employment with the city of New Britain was terminated. On January 10, 1974, the plaintiff forwarded an appeal to the commission.

On January 29, 1974, the commission voted at its regular meeting to send a notice to the plaintiff requesting that he grant the commission a thirty-day extension for scheduling a hearing of the appeal "due to the previous meetings being cancelled and also the heavy administrative schedule of the Commissioners." A later request setting forth the proposed thirty-day extension was sent to the plaintiff by the chairman of the commission on January 30, 1974. Section 19 of the rules of the commission, the Merit System Act, as adopted under the terms of the New Britain city charter, provided: "The Civil Service Commission, on receiving such notice of appeal, shall set a date for a hearing of the reasons for the removal, discharge or reduction, which date shall not be more than thirty days after the date of the removal, discharge or reduction. Notice of the time and place of such hearing shall be sent to the employee appealing by registered mail at least ten days before the date set for such hearing." The last day for the hearing would have been February 8, 1974. The plaintiff did not respond or object to the thirty-day extension proposal of the commission prior to that date. On February 19, 1974, the commission held its regular meeting at which time it voted to schedule the hearing on the suspension and discharge for the next meeting on March 13, 1974, and on February 20, 1974, a letter notice of the scheduled date was forwarded by the commission's

chairman by regular mail. On February 25, 1974, the plaintiff's counsel gave notice by letter to the commission that he had just been retained as counsel, that other commitments would prevent his attending the scheduled March 13 hearing and that he desired to have the hearing date continued. In the same letter the plaintiff's counsel also stated that he did not have a copy of the charges filed against his client, that he was requesting copies of the "entire police file, including statements" and that nothing contained in his letter was to be deemed a waiver of any of his client's rights insofar as the provisions of section 19 of the Merit System Act were concerned.[2] The hearing was rescheduled for April 1, 1974. The appeal was heard on April 1 but could not be completed on that day, and after

[2] "DISCHARGE, REDUCTION IN RANK OR PAY
Section 19. . . .

A person removed, discharge[d] or reduced shall be furnished, by the appointing authority making the removal, with the reason in writing for such action and a copy of the same shall be immediately forwarded to the Civil Service Commission. Within five days after the removal, discharge or reduction, an appeal in writing may be made to the civil service commission by the employee so removed, discharge[d] or reduced. The Civil Service Commission, on receiving such notice of appeal, shall set a date for a hearing of the reasons for the removal, discharge or reduction, which date shall not be more than thirty days after the date of the removal, discharge or reduction. Notice of the time and place of such hearing shall be sent to the employee appealing by registered mail at least ten days before the date set for such hearing. Like notice shall also be given the appointing authority making the removal. The civil service commission or any committee appointed by it shall conduct the hearing or investigation. The employee appealing shall have full opportunity to appear at such hearing, to be represented by counsel and to present witnesses in his behalf. In the course of a hearing or investigation as herein provided for, any member of the commission and of any committee appointed by it shall have the power to administer oaths and to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to such hearing or investigation as provided. All evidence may, on the order of the board, be taken by a competent reporter. . . ."

two continuances, was rescheduled to May 9 at which time it was concluded. On May 21, 1974, the commission voted to deny the plaintiff's appeal and to sustain the board and on May 23, 1974, the commission notified the plaintiff of their decision.

The plaintiff claimed that, as a matter of law, it is mandatory that every requirement of the civil service law be followed and that proof of substantial compliance is not sufficient. He also made other claims arising out of these claims which urged that the commission violated section 19 of the Merit System Act of the city of New Britain which concerned the discharge in rank or reduction in pay of a civil service employee. It is the overruling of the plaintiff's claims of law directed to these claims that we consider dispositive of this appeal and therefore we need not discuss any other assignment of error.

The record offers assistance on the plaintiff's claim that section 19 of the Merit System Act was mandatory. The commission itself wrote to the plaintiff "requesting" a thirty-day extension of the time limit "normally required." In doing so it expressly recognized the time limitation imposed upon it by section 19 and as we have said "[t]he practical interpretation of legislative acts by governmental agencies responsible for their administration is a recognized aid to statutory construction." *State ex rel. James* v. *Rapport,* 136 Conn. 177, 182, 69 A.2d 645; see also *State ex rel. Gray* v. *Quintilian,* 121 Conn. 300, 304, 184 A. 382. This request for the extension of the thirty-day limitation "normally required" is an acknowledgment by the commission that it was a body of special and limited jurisdiction and therefore that it had no powers except such as the laws of its creation gave it and that it could not enlarge upon its powers; *Vivian* v. *Bloom,* 115 Col.

579, 584, 177 P.2d 541; and this court has said that "[t]he rules and regulations of the civil service commission have the force and effect of law." *Gilbert* v. *Civil Service Commission,* 158 Conn. 578, 582, 265 A.2d 67.

This rule in section 19 uses the terms "shall" and "may," commonly mandatory and directory in connotation, a factor that evidences affirmative selectivity of terms with specific intent to be distinctive in meaning. The words "shall" and "may" must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings. *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 428–29, 226 A.2d 380; *Blake* v. *Meyer,* 145 Conn. 612, 616, 145 A.2d 584; see also *Mazzola* v. *Southern New England Telephone Co.,* 169 Conn. 344, 365n, 363 A.2d 170. Indeed, there is nothing in this civil service rule expressive of any contrary intent. *Shulman* v. *Zoning Board of Appeals,* supra, 429. The words "shall" and "may" in section 19 are to be construed according to the commonly approved usage of the language. General Statutes § 1-1; *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 97, 291 A.2d 721. Or, stated another way, statutory language is to be given its plain and ordinary meaning. *Rizzo* v. *Price,* 162 Conn. 504, 509, 294 A.2d 541. When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction. *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36. The plain and ordinary distinction in meaning between "shall" and "may" was intended in rule 19.

With our conclusion that the word "shall" in section 19 is mandatory, the doctrine of substantial

compliance is not to be considered. We have had occasion to speak to the quantum of compliance that is required in civil service law. In *Resnick* v. *Civil Service Commission,* 156 Conn. 28, 32–33, 238 A.2d 391, we said that "[i]t is mandatory that every requirement of the civil service law be followed, and proof that substantial compliance exists is not enough." In *Gilbert* v. *Civil Service Commission,* supra, 581–82, which concerned the Merit System Act and civil service rules of the city of New Britain, we said that "[t]he statutory provisions of the merit system act or the civil service rules establish the conditions and procedures governing the discipline of civil service employees and must be followed to effect a lawful disciplinary action. Such an employee is entitled to the protection specifically provided by the civil service act in effect. *Turrill* v. *Erskine,* 134 Conn. 16, 21, 54 A.2d 494; *Hanley* v. *Murphy,* 40 Cal. 2d 572, 581, 582, 255 P.2d 1; *Peckham* v. *Mayor of Fall River,* 253 Mass. 590, 592, 149 N.E. 622; 15 Am. Jur. 2d, Civil Service, §§ 33, 34; 67 C.J.S., Officers, §§ 59 (a), 62 (b)." Compliance by a civil service commission that is "tantamount" to substantial compliance is not sufficient where the civil service provision is mandatory, as substantial performance has no application to the performance of duty by those entrusted with the administration of the civil service law. It would open the door to abuses which the law was designed to suppress. A civil service statute is mandatory as to every requirement. *Walker* v. *Jankura,* 162 Conn. 482, 489–90, 294 A.2d 536; see *State ex rel. Kos* v. *Adamson,* 226 Minn. 177, 182, 32 N.W.2d 281. The abuses that could follow upon permitting substantial compliance with section 19 would deter important objects inherent in the civil service law. These include the entitlement of a civil service employee to the

protection specifically provided by the civil service law in effect; see *Gilbert* v. *Civil Service Commission,* supra, 582; the ready availablity of witnesses and delays that could result in change of commission membership. Public employment, which is protected by civil service, deserves fair protections to avoid the potential of abuse that would disserve both government and its civil service employees. The Draconian sanction of discharge or termination of employment of a civil service employee merits strict compliance with relevant civil service law and rules no less than does initial appointment to civil service employment.

The commission cannot abrogate, as it did here, the force of positive rule provisions where the rules do not grant them such power. *Ziomek* v. *Bartimole,* 156 Conn. 604, 609, 244 A.2d 380. We are aware that "[c]ourts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their action." *Silver Lane Pickle Co.* v. *Zoning Board of Appeals,* 143 Conn. 316, 319, 122 A.2d 218. The infirmity in the commission's action is neither technical nor microscopically disclosed; its core infirmity is the failure to follow mandatory provisions of a civil service rule having the force of law.

Some suggestion is made that the plaintiff waived the notice requirements of section 19. "Waiver is the intentional relinquishment of a known right." *Jenkins* v. *Indemnity Ins. Co.,* 152 Conn. 249, 257, 205 A.2d 780; *Novella* v. *Hartford Accident & Indemnity Co.,* 163 Conn. 552, 561, 316 A.2d 394. It should be specially pleaded. Practice Book, 1963, § 120; *Eastern Sportswear Co.* v. *S. Augstein & Co.,* 141 Conn. 420, 425, 106 A.2d 476. However, where

facts are set up in a pleading to warrant the inference of waiver, it will be considered though it is not expressly alleged. *Jenkins* v. *Indemnity Ins. Co.*, supra, 256. Here waiver is not specially pleaded and the pleadings do not raise that issue. The plaintiff's posture before the commission and the court below has consistently been one of express reservation of his rights.

There is error, the judgment is set aside and the case is remanded with direction to render judgment sustaining the appeal and reinstating the plaintiff to the position from which he was discharged.

In this opinion the other judges concurred.