HAROLD G. SEALS ET AL. *v.* ALAN J. HICKEY ET AL.

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued November 5, 1981—decision released March 2, 1982

*Kevin T. Nixon,* with whom, on the brief, was *John E. Colella,* for the appellant (named plaintiff).

*Joel T. Rottner,* with whom, on the brief, was *Joseph F. Skelley, Jr.,* for the appellee (defendant John Errichetti Company).

ARTHUR H. HEALEY, J. This action was brought by the plaintiffs Harold Seals and his father, Lawrence Seals, for damages as a result of injuries received by Harold in an automobile accident on September 27, 1975, in Waterbury.[1] Harold was a passenger in an automobile, operated by the defendant Alan Hickey and owned by Alan's father, the defendant Donald Hickey, when it went out of control and struck a pole. The action was instituted against the defendants Hickey alleging negligent operation of the automobile, against the defendant state of Connecticut (through its commissioner of transportation) and the defendant city of Waterbury alleging a defective highway, against the defendant Armond Gentile d/b/a Gentile's Restau-

---

[1] The plaintiff Harold Seals sought damages for personal injuries and the plaintiff Lawrence Seals sought damages for medical and other out-of-pocket expenses incurred by him on behalf of his son, Harold, who was a minor on September 27, 1975.

rant alleging violation of the Dram Shop Act and against the defendant John Errichetti Company (Errichetti) alleging negligence in allowing water to escape from its property thereby causing a dangerous condition on the highway. Prior to trial, the plaintiff Harold Seals settled with the defendants Alan Hickey, Donald Hickey, state of Connecticut and city of Waterbury, (hereinafter collectively referred to as the released defendants), for the total sum of $52,500. The action was withdrawn by both plaintiffs as to the released defendants.

The case went to trial before a jury as against the defendants Gentile and Errichetti.[2] The jury returned a verdict in favor of Harold Seals in the amount of $65,000 and a verdict in favor of Lawrence Seals in the amount of $20,000. The jury also returned a verdict in favor of the defendant Gentile.

After the verdict, Errichetti filed two motions: a motion for entry of judgment in accordance with its special defense referring to the payment of the

---

[2] The defendants Gentile and Errichetti amended their answers by adding special defenses of the payment of $52,500 by the released defendants. The special defense of the defendant John Errichetti Company stated:

"The Plaintiffs in this matter have already received payment from Alan J. Hickey and Donald P. Hickey in the amount of forty-nine thousand, five hundred dollars ($49,500) and from the State of Connecticut and City of Waterbury in the total amount of three thousand dollars ($3,000).

"The Defendant pleads said amounts as a setoff, pursuant to § 62-216 (a), [sic] Connecticut General Statutes, from any verdict which may be rendered against this Defendant in this case."

Following the procedure set out in General Statutes § 52-216a, these special defenses were not submitted to the jury and no evidence of such payment was introduced at the trial.

$52,500 to the plaintiffs by the released defendants and a motion to set aside the verdict.[3] In the former motion, Errichetti moved "that the Court enter Judgment against said Defendant [Errichetti] in accordance with the jury verdict and in accordance with Connecticut General Statutes § 52-216 (a) [sic]; and that the Court reduce said verdict by the amount of fifty-two thousand five hundred dollars ($52,500) as already received by the Plaintiffs." As to the plaintiff Lawrence Seals, the court denied these motions "inasmuch as it was stipulated that none of the $52,500 paid by the released defendants was paid to him or for his benefit"[4] and it ordered judgment in his favor against Errichetti for the sum of $20,000. The court, however, granted the defendants' motion as to the plaintiff Harold Seals, ordering that "the verdict of $65,000 in his favor is hereby adjusted by deducting therefrom $52,500 and judgment may enter in his favor against the defendant Errichetti in the sum of $12,500 plus costs . . . ." It denied the motion to set aside the verdict stating that the deduction ($52,500) was properly considered under the motion for entry of judgment as well as for other reasons set out in its lengthy opinion on the post-trial motions. The plaintiff has appealed from the "entry of Judgment for the plaintiff Harold G. Seals on the defendant Errichetti's Motion to Enter Judgment according to its first Special Defense."[5]

---

[3] The motion to set aside filed by the defendant Errichetti also sought judgment in accordance with its first special defense. The court ruled on the other grounds of the motion to set aside in a manner not relevant here.

[4] The trial court's memorandum notes that "there is no claim that the verdict in favor of the father Lawrence Seals for medical expenses, etc. should be reduced under § 52-216a."

[5] The defendant Errichetti filed a cross appeal "from entry of the Judgment for the Plaintiff" which it later withdrew.

The plaintiff claims that the trial court erred: (1) in holding that General Statutes § 52-216a,[6] as interpreted by this court in *Fritz* v. *Madow,* 179 Conn. 269, 426 A.2d 268 (1979), is unconstitutional under the void for vagueness doctrine of the due process clause; and (2) in holding that the word "may," as it appears in § 52-216a, must be construed as meaning "shall" in order to uphold the constitutionality of § 52-216a. He also claims that § 52-216a as interpreted by *Fritz* v. *Madow,* supra, does not deny the defendant his right to a jury trial guaranteed by the Connecticut constitution.

We address first the claim of the plaintiff that § 52-216a as interpreted by *Fritz* is not unconstitutional under the void for vagueness doctrine thereby violating the due process clause. The trial court agreed with the defendant Errichetti that "any construction of § 52-216a which would grant a discretion to the trial judge to 'adjust' a jury verdict without

[6] General Statutes § 52-216a entitled "Reading of agreements or releases to jury prohibited" provides: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action, shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of such cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in such action be read or in any other way introduced to a jury, except the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to such action pursuant to such agreement not to sue or such release of claim. Nothing in this section shall prohibit the introduction of such agreement or release in a trial to the court."

An examination into the legislative history concerning the passage of Public Acts 1976, No. 76-197, codified in General Statutes § 52-216a, yields very little. The statement of purposes on the original bill however, recites: "To prohibit the reading of agreements not to sue or releases of claim before a jury, which often prejudices a party . . . ."

Section 52-216a was amended in 1977 in a manner not critical to any of the issues raised in this appeal. See Public Acts 1977, No. 77-604, § 33, effective July 6, 1977.

standards would clearly render that portion of the statute unconstitutional under the void-for-vagueness doctrine." While recognizing that a judgment as to the vagueness of a state statute must be made in light of prior state court constructions of that statute; see e.g., *Wainwright* v. *Stone,* 414 U.S. 21, 22-23, 94 S. Ct. 190, 38 L. Ed. 2d 179 (1973); *United States* v. *Vuitch,* 402 U.S. 62, 71-72, 91 S. Ct. 1294, 28 L. Ed. 2d 601 (1971); *Office of Disciplinary Counsel* v. *Campbell,* 463 Pa. 472, 483 n.7, 345 A.2d 616 (1975), cert. denied, 424 U.S. 926, 96 S. Ct. 1139, 47 L. Ed. 2d 336 (1976); the trial court determined that *Fritz* gave "no such judicial gloss" to § 52-216a.

Courts have derived the void for vagueness doctrine from the constitutional guarantee of due process. See, e.g., *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 402-403, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966); *Lanzetta* v. *New Jersey,* 306 U.S. 451, 59 S. Ct. 618, 83 L. Ed. 888 (1939). See generally "The Void-for-Vagueness Doctrine in the Supreme Court," 109 U. Pa. L. Rev. 67 (1960). It can fairly be stated that "[a] vagueness attack stems from 'the exaction of obedience to a rule or standard which [is] so vague and indefinite as really to be no rule or standard at all.' *A.B. Small Co.* v. *American Sugar Refining Co.,* [267 U.S. 233, 239, 45 S. Ct. 295, 69 L. Ed. 589 (1925)]." *State* v. *Anonymous,* 179 Conn. 155, 163-64, 425 A.2d 939 (1979). We have noted that "[s]ince the accepted analysis of the so-called vagueness doctrine is, in large part, based upon considerations of the traditional due process requirements of notice and nondiscretionary standards, those two constitutional claims are, in reality, founded upon the same common premise and thus may be treated as one." *McKinney* v. *Coventry,* 176 Conn. 613, 616, 410 A.2d 453 (1979). In *Connally* v. *General Con-*

*struction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926), a case involving a statute imposing criminal sanctions for its violation, the United States Supreme Court succinctly explained the notice doctrine upon which the vagueness doctrine rests, stating: "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *McKinney* v. *Coventry,* supra, 617. In short, "[d]ue process requires that a statute afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." *McKinney* v. *Coventry,* supra, 618 and cases cited therein. Under the due process clause of the fourteenth amendment, the vagueness doctrine is applicable to the enactments of state legislatures. See, e.g., *Edgar A. Levy Leasing Co.* v. *Siegel,* 258 U.S. 242, 42 S. Ct. 289, 66 L. Ed. 595 (1922).[7] Application of the vagueness standard to the statute before us is complicated by the general understanding, which we share, that civil statutes are required to demonstrate a lesser degree of specificity than are criminal statutes. See, e.g., *Papachristou* v. *Jacksonville,* 405 U.S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972); *Winters* v. *New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 840 (1948); *Shobe* v. *Borders,* 539 S.W.2d 330, 332 (Mo. App. 1976). This is so even though the common-meaning standard applies to both. See, e.g., *Jordan* v. *DeGeorge,* 341 U.S. 223, 230–32, 71 S. Ct. 703, 95 L. Ed. 886 (1951).

---

[7] The vagueness doctrine is applicable to acts of Congress under the due process clause of the fifth amendment. See *Giaccio* v. *Pennsylvania,* 382 U.S. 399, 402, 86 S. Ct. 518, 15 L. Ed. 2d 447 (1966); *United States* v. *Cohen Grocery Co.,* 255 U.S. 81, 41 S. Ct. 298, 65 L. Ed. 516 (1921).

"The initial danger in a vague statute is the absence of fair warning." *State* v. *Anonymous,* supra, 164. Persons who may be affected by § 52-216a should be able to determine what conduct or procedure on the part of the court that may affect them is permitted or required by reference to the wording of the statute together with whatever judicial gloss may be available to interpret its wording. See, e.g., *State* v. *Pickering,* 180 Conn. 54, 64, 428 A.2d 322 (1980). The statute together with that judicial gloss, if any, must be reasonably specific and direct enough so as to afford a person of ordinary intelligence a reasonable opportunity to know what is permitted by this civil statute. We have pointed out that in order to repel a vagueness challenge, "a statute must state its standard with adequate clarity and mark sufficiently distinct boundaries for the law to be fairly administered. Lack of precision, however, is not, in or of itself, offensive to the requirement of due proces. *Roth* v. *United States,* 354 U.S. 476, [491-92,] 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)." *State* v. *Anonymous,* supra.

Our examination of § 52-216a together with the judicial gloss put on it by *Fritz* shows that what it permits is sufficiently clear. It is apparent from the statute itself that the evil intended to be avoided by its passage was the jury's knowledge of the existence of any release of claim or agreement not to sue, because such knowledge might tend to be prejudicial to a party to the action. This is thoroughly practical; *Fritz* recognized that such disclosure to the jury "was often more prejudicial than probative." *Fritz* v. *Madow,* supra, 273. On the statute's keeping such matters from the jury, we have said that it "expresses the better policy, removing whatever possibility for prejudice [that] may exist . . . ."

*Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978). We point out that the statement of purpose articulated in this statute on its introduction in the General Assembly was: "To prohibit the reading of agreements not to sue or releases of claims before a jury, *which often prejudices a party to the action."* (Emphasis added.) Raised Committee Bill No. 34, Judiciary Committee, 1976 Regular Session. The statement of purpose of a bill, on its introduction into the legislature, may be considered in determining its intent. See *Miller* v. *Board of Education,* 166 Conn. 189, 194, 348 A.2d 584 (1974); *Harris* v. *Planning Commission,* 151 Conn. 95, 100, 193 A.2d 499 (1963).

In *Fritz,* we said that the word "may" as used in § 52-216a was permissive and not mandatory, and that its use in that statute "is a clear indication that a discretionary rather than a mandatory duty was intended." *Fritz* v. *Madow,* supra, 272, citing *Shulman* v. *Zoning Board of Appeals,* 154 Conn. 426, 428, 226 A.2d 380 (1967). To reinforce this conclusion we indicated that the fact that this statute uses "shall" three times and "may" only once further supports the claim that "the legislature intended to distinguish those words according to their ordinary meanings." *Fritz* v. *Madow,* supra, 272; see *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978). When we decided *Fritz,* we held that conventional rules of statutory construction required that "may" mean "may" thus conferring discretion, as the plain language of that statute indicated, and we adhere to that view in this case. We decide, therefore, that the trial court, in the face of this plain language embodying a clear expression of legislative intent, went too far in its efforts to salvage the statute against a constitutional attack.

When language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction. *Jones* v. *Civil Service Commission,* supra, 509; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36 (1967). "Although the court should try, whenever possible, to construe statutes to avoid a constitutional infirmity, they may not, in doing so, rewrite the statute, or do violence to its plain language." *Long Island Vietnam Moratorium Committee* v. *Cahn,* 437 F.2d 344, 348 (2d Cir. 1970), aff'd, 418 U.S. 906, 94 S. Ct. 3197, 41 L. Ed. 2d 1153 (1974).

In construing "may" as "shall" in § 52-216a, the court also erred in disregarding plainly expressed legislative intent because the legislative use of "may" demonstrated its intent not to have it construed as "shall" which was the common-law rule requiring deduction of preverdict payments from verdicts. See *Kosko* v. *Kohler,* supra, 387; *Tough* v. *Ives,* 162 Conn. 274, 286–87, 294 A.2d 67 (1972); *Bonczkiewicz* v. *Merberg Wrecking Corporation,* 148 Conn. 573, 577–78, 172 A.2d 917 (1961); *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 95, 92 A. 883 (1915). See also 4 Restatement (Second), Torts § 885 (2) and (3); 25 C.J.S., Damages § 98 (2); annot., 104 A.L.R. 931; James, "Connecticut's Comparative Negligence Statute: An Analysis of Some Problems," 6 Conn. L. Rev. 207, 224 (1973); Tait, "Connecticut's Collateral Source Rule: Stepchild of the Law of Damages," 1 Conn. L. Rev. 93, 97–98 (1968). The common law must yield to the statute. *Burns* v. *Gould,* 172 Conn. 210, 222, 374 A.2d 193 (1977). It is clear from the plain language of the statute, under accepted norms of statutory construction, that the legislature meant "may" to mean "may" and to that extent, altered the common law in conferring dis-

cretion on the trial court to deduct. The court, in endeavoring to find the statute constitutional cannot, therefore, construe it so that it restates the common law rule which the legislature, by the very act of enacting the statute, plainly intended to abrogate. Our conclusion here does not at all contravene the principle that "[n]o statute is to be construed as altering the common law, farther than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express. *Shaw* v. *Railroad Co.*, 101 U.S. 557, 565, 25 L. Ed. 892 [1880]." *Dennis* v. *Shaw*, 137 Conn. 450, 452, 78 A.2d 691 (1951).

Our conclusion that "may" means "may" in this statute accords with our like determination in *Fritz*. In *Fritz*, however, unlike this case, no constitutional issues were raised. Because the statute has been subjected to constitutional attack, on not one, but several grounds, we have different considerations before us here than we did in *Fritz*. Earlier in this opinion we set out the controlling law on the void for vagueness claim; this statute is not unconstitutional on that ground. Section 52-216a, as interpreted by *Fritz*, with its "excessive" standard, provides a standard sufficient to satisfy procedural due process.[8]

In *Fritz*, we said (p. 273) : "[w]hile it is true that the jury determines damages, it is also true that the court reviews damages to determine whether

---

[8] The United States Supreme Court has upheld noncriminal state statutes against a vagueness attack where statutory construction by a state court has removed such alleged vagueness. See *Minnesota ex rel. Pearson* v. *Probate Court of Ramsey County*, 309 U.S. 270, 60 S. Ct. 523, 84 L. Ed. 744 (1940). To similar effect are *Bandini Petroleum Co.* v. *Superior Court, Los Angeles County*, 284 U.S. 8, 52 S. Ct. 103, 76 L. Ed. 136 (1931), and *Miller* v. *Schoene*, 276 U.S. 272, 48 S. Ct. 246, 72 L. Ed. 568 (1928).

they are adequate. In this case, it is apparent that the verdict returned by the jury was such that the court refused to deduct from it any portion of the payment for the covenant on the ground that the total of the two amounts did not constitute an excessive recovery." This language indicates that we approved of the view that the action of a trial judge, under § 52-216a, is entitled to great weight, recognizing that he may not deduct "any" portion of the prior settlement payments from the verdict unless those payments plus the amount of the verdict are excessive *as a matter of law*. In exercising its discretion whether to deduct under this "excessive" standard we have already noted that the statute itself provides that the court "may deduct from the verdict any amount of money received . . . ." This legal discretion of the trial judge, exercisable under the "excessive" standard, is, of course, reviewable for any claimed abuse.[9] See, e.g., *Birgel* v. *Heintz*, 163 Conn. 23, 27, 301 A.2d 249 (1972). That discretion, although broad, is not unlimited. See *Lee* v. *Lee*, 171 Conn. 1, 3, 368 A.2d 11 (1976). While the "excessive" standard itself does not have a precise meaning, it does not lack metes and bounds. See *State* v. *Anonymous*, supra, 165. What is an "excessive" verdict as a matter of law has been discussed in many of our cases, and, importantly, has been determined in the context of the particular case. The discretion of the trial court in acting in such matters has been the accepted benchmark for examining claimed abuses of that discretion. Every case is different, and § 52-216a with the

---

[9] Not only is such discretion reviewable on appeal but we do not know of any reason why any party who claims that the trial judge has abused his discretion in acting under General Statutes § 52-216a may not also move to have him reconsider that exercise in the trial court.

judicial gloss embodying the "excessive" standard not only adds to the fair notice requirement of due process but also proscribes unlimited discretion. Our case law over the years has delineated those parameters in a manner amenable to the exercise of judicial power in the trial court, and, thereafter, to meaningful judicial review. See, e.g., *Mansfield* v. *New Haven*, 174 Conn. 373, 374, 387 A.2d 699 (1978); *Birgel* v. *Heintz*, supra, 28; *McKirdy, Admr.* v. *Cascio*, 142 Conn. 80, 86, 111 A.2d 555 (1955); *Gorczyca* v. *New York, N.H. & H. R. Co.*, 141 Conn. 701, 703, 109 A.2d 589 (1954); Maltbie, Conn. App. Proc. § 197. We therefore hold that the statute is not unconstitutional under the void for vagueness doctrine. It was error for the trial court to hold to the contrary.

Nevertheless, the fact that a statute may be constitutional when attacked on one ground does not necessarily mean that it can withstand such an attack on another ground. This brings us to the claim that § 52-216a as interpreted by *Fritz* denies the defendant his constitutional right to trial by jury.[10] It presents a question of constitutional law in concrete, not abstract, form and is, therefore, capable of determination. See *Taylor* v. *Robinson*, 171 Conn. 691, 693, 372 A.2d 102 (1976).

The defendant has a constitutional right of trial by jury[11] under article first, § 19 of the Connecticut constitution, adopted in 1965, which declares "[t]he right of trial by jury shall remain inviolate." This

---

[10] This claim was briefed and argued by the parties. It was raised in the trial court which did not reach the issue because it found the vagueness issue dispositive.

[11] The defendant does not claim that the federal constitution guarantees him a jury trial in this civil case. See, e.g., *Robertson* v. *Apuzzo*, 170 Conn. 367, 380, 365 A.2d 824, cert. denied, 429 U.S. 852, 97 S. Ct. 142, 50 L. Ed. 2d 126 (1976).

language is identical to that of article first, § 21 of the 1818 constitution, and we have held that the 1965 provision secures the right of a jury trial wherever that right existed when our constitution was adopted in 1818. See *Robertson* v. *Apuzzo,* 170 Conn. 367, 381, 365 A.2d 824, cert. denied, 429 U.S. 852, 97 S. Ct. 142, 50 L. Ed. 2d 126 (1976), and cases cited therein. The defendant claims that § 52-216a as interpreted by *Fritz* "allows the Trial Court to arbitrarily substitute its judgment for that of the jury and thereby denies to the parties their constitutional right to have the extent of the damages decided by a jury." The plaintiff, on the other hand, denies that the statute as interpreted impairs the litigants' constitutional right to have issues of fact decided by the jury. He argues that the jury still determines what the damages are and that the trial court's discretion to reduce the verdict by an amount previously gained in settlement is limited "by traditional limitations inherent in discretionary authority, and by the 'excessive' standard set forth by this Court in *Fritz* v. *Madow,* supra." These limitations, he stresses, convert any question as to whether to reduce the verdict into one of law. We disagree with the plaintiff.

Litigants have a constitutional right to have questions of fact decided by a jury. *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 540, 368 A.2d 125 (1976); *Michaud* v. *Gurney,* 168 Conn. 431, 434, 362 A.2d 857 (1975); *Cicero* v. *E.B.K., Inc.,* 166 Conn. 490, 494, 352 A.2d 309 (1974); *Spencer* v. *Good Earth Restaurant Corporation,* 164 Conn. 194, 198, 319 A.2d 403 (1972); *Pinto* v. *Spigner,* 163 Conn. 191, 198, 302 A.2d 266 (1972); *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352 (1954); *Robinson* v. *Backes,* 91 Conn. 457, 460, 99 A. 1057 (1917).

In speaking to the command of the seventh amendment to the federal constitution that "the right of jury trial shall be preserved" the United States Supreme Court (Brandeis, J.) said that the seventh amendment "does not require that old forms of practice and procedure be retained . . . . It does not prohibit the introduction of new methods for determining what facts are actually in issue, nor does it prohibit the introduction of new rules of evidence. Changes in these may be made. New devices may be used to adapt the ancient institution to present needs and to make of it an efficient instrument in the administration of justice. Indeed, such changes are essential to the preservation of the right. The limitation imposed by the Amendment is merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with." (Footnote and citations omitted.) *Ex Parte Peterson,* 253 U.S. 300, 309–10, 40 S. Ct. 543, 64 L. Ed. 919 (1920). We have said that "[i]t is not violative of the constitutional guarantee of the right to a jury trial for the legislature to enact a statute which changes the form of jury procedure if it still maintains the substance of the institution. *State* v. *Main,* 69 Conn. 123, 131, 37 A. 80 [1897]." *State* v. *Perrella,* 144 Conn. 228, 231, 129 A.2d 226 (1957).

The constitutional right of trial by jury "includes the right to have the jury, rather than the court, pass upon the factual issue of damages, when there is room for a reasonable difference of opinion among fair-minded men as to the amount which should be awarded. The question of damages in personal injury cases, especially in these times of changing values, is always a difficult one. *Prosser*

v. *Richman,* 133 Conn. 253, 256, 50 A.2d 85 [1946]. Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant." *Slabinski* v. *Dix,* 138 Conn. 625, 628–29, 88 A.2d 115 (1952). "The amount of the award is a matter within the province of the trier of the facts." *Gorczyca* v. *New York, N.H. & H. R. Co.,* 141 Conn. 701, 703, 109 A.2d 589 (1954). See *Vandersluis* v. *Weil,* 176 Conn. 353, 357, 407 A.2d 982 (1978); *Gondek* v. *Pliska,* 135 Conn. 610, 617, 67 A.2d 552 (1949). While we recognize the right of a court to set aside a jury verdict under proper circumstances, we acknowledge this fundamental right to trial by jury as "one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 [1970]." *Mansfield* v. *New Haven,* 174 Conn. 373, 375, 387 A.2d 699 (1978).

We agree with the defendant that this statute allows the court to interfere with and invade the factfinding function of the jury by permitting it to substitute its judgment for that of the jury.[12] There is no question but that "it is competent for the legislature to subject the exercise of the right to a jury trial to conditions and regulations of procedure

---

[12] We also note that what appears to be the dissent's inadequacy test "which would authorize a trial judge to refuse to make a deduction only where the plaintiff would be left with total compensation which is inadequate as a matter of law" would also clearly violate the litigant's constitutional right to trial by jury. See our discussion of additur and remittitur *infra.*

for the better promotion of justice and the public welfare so long as the substance of the right is not adversely affected or the exercise of the right is not prevented." *State* v. *Perrella,* supra, 231. This statute falls without this competency; it invades the "substance of the [jury] institution." See *State* v. *Perrella,* supra. In giving the trial judge this discretion to deduct from the verdict rendered by the jury, the statute denies the defendant his constitutional right to have the jury assess the damages he must pay. Unlike the circumstance where the court may order an additur or remittitur; see *Deedy* v. *Marsden,* 172 Conn. 568, 570, 375 A.2d 1032 (1977); *Noxon* v. *Remington,* 78 Conn. 296, 310, 61 A. 963 (1905); § 52-216a, without more, gives the trial court the power to adjust the verdict without the option of a new trial.

Commendable as the purpose of § 52-216a is, we must hold it unconstitutional. We are constrained to do so, aware of the heavy burden that rests upon one attacking the constitutionality of a statute, after carefully considering it and making every presumption and intendment in favor of its validity. See *State* v. *Olds,* 171 Conn. 395, 411, 370 A.2d 969 (1976); *State* v. *Menillo,* 171 Conn. 141, 145, 368 A.2d 136 (1976); *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958). Our holding of unconstitutionality applies to the entire statute because the parts of the statute are not independent and severable so that the unconstitutionality of one part need not impair the other. See *Collins* v. *York,* 159 Conn. 150, 158, 267 A.2d 668 (1970); *State* v. *Miller,* 126 Conn. 373, 379, 12 A.2d 192 (1940). In other words, where a portion

of the statute is invalid, the valid part can stand only if it and the invalid part are not so mutually connected and dependent as to indicate a legislative intent that they may be inseparable. See *State* v. *Sul,* 146 Conn. 78, 89, 147 A.2d 686 (1958); *Walsh* v. *Jenks,* 135 Conn. 210, 217, 62 A.2d 773 (1948); *Branch* v. *Lewerenz,* 75 Conn. 319, 324, 53 A. 658 (1902). "Where it is not possible to separate that part of a law which is unconstitutional from the rest of the law, the whole law fails. *Lynch* v. *U.S.,* 292 U.S. 571, 54 S. Ct. 840, 78 L. Ed. 1434 (1934); *Hill* v. *Wallace,* 259 U.S. 44, 42 S. Ct. 453, 66 L. Ed. 822 (1922); *Harrison* v. *St. Louis & S.F.R. Co.* 232 U.S. 318, 34 S. Ct. 333, 58 L. Ed. 621 (1914); *Gherna* v. *State,* 16 Ariz. 344, 146 P. 494 (1915)." *United Farm Workers Nat. Union* v. *Babbit,* 449 F. Sup. 449, 454 (D.C. Ariz. 1978). Separability involves essentially two considerations: the legislature must have intended separability and the statute itself must be capable of separability. See *Dorchy* v. *Kansas,* 264 U.S. 286, 290, 44 S. Ct. 323, 68 L. Ed. 686 (1924); 2 Sutherland, Statutory Construction (4th Ed.) § 44.03. The dominant purpose of § 52-216a was to prevent the agreements or releases referred to in the statute from being read to the jury or introduced into evidence. In order to allow the court to utilize any agreement or release by deducting from the verdict, that portion of § 52-216a which we have held unconstitutional was included in the statute. In determining that the entire statute must fall, we can properly consider whether the legislature would have enacted it without the invalid portion. See *Carter* v. *Carter Coal Co.,* 298 U.S. 238, 313–14, 56 S. Ct. 855, 80 L. Ed. 1160 (1936); *Santa Barbara School District* v. *Superior Court,* 13 Cal. 3d 315, 331, 530 P.2d 605 (1975). We conclude that it would not. That portion of § 52-216a which

remains after the constitutional attack provides only: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action, shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of such cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in such action be read or in any other way introduced to a jury . . . ." This offers absolutely no direction to the court concerning what steps it may take after the verdict has been returned. In light of what we have said, § 52-216a is clearly inseparable and the entire statute must fall.

We cannot allow that portion which prohibits the reading to the jury or introduction into evidence of the agreements referred to in § 52-216a to stand alone for still another reason. In order to render that part workable, we would be called upon to implement the remaining part. This we cannot do. We do not act as a revisor of the statutes. *Aspetuck Valley Country Club* v. *Tax Commissioner,* 180 Conn. 5, 10, 428 A.2d 328 (1980); *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 503, 423 A.2d 129 (1979). That is the province of the legislative branch, not the judicial branch. In light of our holding that § 52-216a has been found unconstitutional as violating the defendant's right to trial by jury under the Connecticut constitution, the procedure in circumstances such as those presented by this case, subject to future legislation, will revert to that pre-existing the enactment of § 52-216a as set out in such cases as *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978); *Tough* v. *Ives,* 162 Conn. 274,

286-87, 294 A.2d 67 (1972) ; *Bonczkiewicz* v. *Merberg Wrecking Corporation,* 148 Conn. 573, 577-78, 172 A.2d 917 (1961).

There is error in part, the judgment is set aside and the case is remanded to the trial court for a hearing in damages before a jury in accordance with this opinion as against the defendant Errichetti.

In this opinion, SPEZIALE, C. J., PETERS and ARMENTANO, Js., concurred.

SHEA, J. (dissenting). The majority opinion leaves me with a feeling of ambivalence. I applaud the early demise of the notion sponsored by *Fritz* v. *Madow,* 179 Conn. 269, 426 A.2d 268 (1979), of imposing upon trial judges, without benefit of light or landmark in the form of guidance from this court, the duty to ride herd upon errant jurors in awarding damages within the broad territory lying between excessiveness and inadequacy as a matter of law. I nevertheless decry the conclusion reached by the majority that a statute, General Statutes § 52-216a, the salutary purpose of which is commended in the opinion, must be declared unconstitutional in order to achieve this result. The only necessity dictating this novel approach to problems arising from a belated recognition of error on our part, ordinarily resolved by overruling the deviating precedent, seems to be a determination to foster the myth of our infallibility.

The fixation of the majority upon the use of the word "may" instead of "shall" in the portion of § 52-216a authorizing the trial court to deduct payments made by other tortfeasors from a verdict is the asserted rationale for the frustration of the

legislative purpose which the opinion has achieved. In *Fritz* the "sole issue on appeal" was stated to be "whether a payment by one tortfeasor for a covenant not to sue that is in excess of the verdict subsequently returned against a joint tortfeasor *necessarily* entitles the joint tortfeasor to a reduction or erasure of the verdict as to damages." (Emphasis added.) *Fritz* v. *Madow,* supra, 271. In correctly responding in the negative to that question the opinion in *Fritz* relied upon the use of "may" in contrast to "shall," used elsewhere in the same statute, as indicating our intention to vest the broad discretion upon the trial judge found now to infringe upon the constitutional right of trial by jury. The dissenting opinion, *Loiselle, J.,* recognized the existence of a narrower discretion under the statute "similar to the discretion exercised by the court when either an additur or a remittitur is made." Id., 276. An additur or a remittitur is granted only when the trial judge in the exercise of this discretion determines that a verdict is inadequate or excessive as a matter of law. The use of "may" rather than "shall" in § 52-216a may readily be explained as indicating an intention on the part of the legislature that, where the deduction from a verdict of the payments received from a joint tortfeasor would leave a plaintiff with total compensation legally inadequate for the losses sustained, as viewed by the trial judge in exercising his limited discretion, no such deduction should be made. *Fronczek* v. *Della Bitta-Bassola, Inc.,* 165 Conn. 102, 103, 328 A.2d 680 (1973). The substitution of "shall" for "may" would have implied that the deduction must be made in any event without consideration of the adequacy of the total amount received by the plaintiff.

It is doubtful that, if the court had been aware of the invasion of the constitutional prerogative of the jury which the opinion in *Fritz* sanctioned, the same construction of § 52-216a would have been adopted. "We cannot impute to the Legislature an intent to pass an unconstitutional statute and a law should be construed, if it can reasonably be done, so as to make it valid." *State* v. *Muolo,* 119 Conn. 323, 330, 176 A. 401 (1935). "A further corollary is that, where a statute reasonably admits of two constructions, one valid and the other invalid on the ground of unconstitutionality, courts should adopt the construction which will uphold the statute even though that construction may not be the most obvious one." *Adams* v. *Rubinow,* 157 Conn. 150, 153, 251 A.2d 49 (1968). In *State* v. *Doe,* 149 Conn. 216, 229, 178 A.2d 271 (1962), these principles were employed to construe the word "shall" in a statute as permissive and not mandatory in order to avoid the question of its unconstitutionality which would otherwise be raised. I see no reason why this court, with the benefit of the hindsight we now possess, does not adopt the interpretation of § 52-216a, implicitly suggested by the dissenting opinion in *Fritz,* which would authorize a trial judge to refuse to make a deduction only where the plaintiff would be left with total compensation which is inadequate as a matter of law. Such a construction of the statute is wholly consistent with its language and statement of purpose, "[t]o prohibit the reading of agreements not to sue or releases of claim before a jury, which often prejudices a party . . . ."

I cannot join in declaring this modest procedural reform unconstitutional because of a jury trial infringement arising wholly from an interpretation

of the statute which the majority opinion prefers to perpetuate rather than overrule the erroneous precedent which gave it birth.

I further do not understand the reason for remanding the case for another trial upon the issue of damages, which have already been determined by the jury in amounts which the trial court concluded lay within the broad range of trier discretion, neither inadequate nor excessive as a matter of law. The majority opinion at no point suggests that the trial court abused its discretion in reaching this conclusion. The complete invalidation of § 52-216a which the majority has achieved leaves the trial court with no discretion but to apply the common-law rule and deduct the payments made by the other defendants, a task which has already been accomplished. There is no disputed issue of fact in regard to the making of those payments or the amount of them. The remand for a new trial on the issue of damages would simply subject the parties to a needless retrial under an obsolete procedure where the amounts received from other tortfeasors would be disclosed to the jury. Even in the absence of § 52-216a, a trial judge had discretion to separate the issues involving payments of other tortfeasors from the trial of liability and damages; Practice Book § 283; and, if the facts relating to such payments were not disputed, to resolve those issues without a jury. See *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978).

For the reasons given above, I dissent.